STATE of Oklahoma, ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,

v.

Joseph Seymour WARZYN, Respondent.

S.C.B.D. No. 2862.

Supreme Court of Oklahoma.

March 4, 1981.

Rehearing Denied March 2, 1981.

---

Doyle W. Argo, Gen. Counsel, Oklahoma Bar Association, Oklahoma City, for complainant.

Joseph Seymour Warzyn, pro se.

BARNES, Vice Chief Justice:

On May 13, 1980, a hearing was held as provided under Article 10 of the Rules Creating and Controlling the Oklahoma Bar Association. The purpose of this hearing was to air charges against Joseph Seymour Warzyn (hereinafter Respondent), who as a practicing attorney had allegedly violated various disciplinary rules of the Code of Professional Responsibility.

Upon hearing the evidence presented, the Trial Authority made Findings of Fact, which we now approve and adopt,[1] as supported by the record. The Findings provide:

## COUNT 1

The Respondent checked into the Southgate Inn in Oklahoma City on April 27, 1975, indicating he would pay cash for his room and services. During his stay of approximately one month, the Respondent was contacted by June Bay, a clerk at the motel, to make arrangements for paying his bill. The Respondent promised he would take care of the bill. Having incurred expenses for food and lodging totaling $499.26, the Respondent left the motel without paying the bill. As a result, felony criminal charges were filed in the District Court of Oklahoma County against Respondent alleging the crime of Defrauding An Innkeeper, 21 O.S.1971 § 1503.

On October 4, 1976, the Respondent entered a plea of nolo contendere to a misdemeanor charge of Defrauding An Innkeeper. The Respondent was given a one-year deferred sentence, placed on unsupervised probation, and ordered to make restitution of $499.26 by November 1, 1976. It was not until May 12, 1977, however, that the Respondent presented a cashier's check in the

---

1. As authorized by 5 O.S., Chapter 1, Appendix 1, Article X, Section 16(b), Rules Creating and Controlling the Oklahoma Bar Association.

amount of $499.26 to the Southgate Inn, as restitution. On motion of the District Attorney, the criminal case was dismissed in July, 1977.

Respondent presented no defense or evidence in mitigation of this Count to the Trial Authority.

## COUNT 2

On February 26, 1977, the Respondent obtained cash and merchandise in the value of $60.35 from one B. S. Obhrai, d/b/a India Emporium, by means of a check written by the Respondent to Mr. Obhrai. When Mr. Obhrai presented the check for payment, the Grant County Bank in Medford, Oklahoma, on which the check was drawn, dishonored the check, due to insufficient funds. Thereafter, Mr. Obhrai called the Grant County Bank and was told that the check would not clear for payment. Attempts by Mr. Obhrai to locate the Respondent were unsuccessful.

Mr. B. B. Bramlett, a Vice-President of the Grant County Bank, testified that on February 26, 1977, the Respondent's account was $25.00 overdrawn. Mr. Bramlett had an open-ended credit arrangement with Respondent, whereby the Grant County Bank would make good any check the Respondent wrote. However, Mr. Bramlett was unaware of the check involved in this matter. Despite the arrangement testified to by Mr. Bramlett, the check to India Emporium was not honored by the bank, and Mr. Obhrai has still not received payment on this check.

The Respondent presented no defense or evidence in mitigation of this Count to the Trial Authority.

## COUNT 3

On approximately May 5, 1976, Mr. Chester Mitchell and his wife sought the professional services of the Respondent in a child custody matter. The fee arrangements were for Mr. Mitchell to pay $100.00 down and a balance of $150.00 at the hearing in the matter. Mitchell gave the Respondent a check for $150.00 to initiate the action,

but Respondent made no court appearance in the matter, nor was any evidence shown that he performed any services in connection therewith.

Mr. Mitchell's only means of contacting the Respondent was to try to locate him at the courthouse, since Respondent told Mitchell that he did not have an office. The Respondent promised to return a portion of the fee, but never did. Mr. Mitchell obtained other counsel.

No evidence was presented by the Respondent to show that he ever performed any services to earn the fee paid to him. No evidence in defense or mitigation of this Count was presented by the Respondent.

## COUNT 4

Count 4 was stricken because no evidence was offered by either party.

## COUNT 5

The Respondent was suspended from the practice of law by the Oklahoma Supreme Court on September 27, 1976, for the nonpayment of dues, and notice was sent by the Clerk to the address of the Respondent as listed on the official roster of the Oklahoma Bar Association. He was not reinstated until June 15, 1977.

The Respondent visited the Mabel Bassett Correctional Center in Oklahoma City several times between December, 1976, and March, 1977, representing himself as an attorney, when in fact the Respondent had been suspended from the practice of law. The Respondent approached an inmate of the facility, named Erma Collins, and asked if she needed legal advice, a solicitation which resulted in his employment by Ms. Collins.

Thereafter, the Respondent was paid approximately $285.00 in several installments by Ms. Collins in order for the Respondent to obtain her parole. No evidence of any service by the Respondent on behalf of Ms. Collins was shown.

During the same period, the Respondent also agreed to represent another inmate, Jeanetta Bolden, in obtaining her early re-

lease from prison. During this employment, the Respondent picked up a check in the amount of $258.20 belonging to Ms. Bolden from her work-release place of employment. Respondent did not have Ms. Bolden's permission to pick up the check, but he nevertheless induced Ms. Bolden to endorse the check with the representation that he would keep $100.00 of the check as attorney's fees and return the remainder to Ms. Bolden.

The Respondent did not return any of the money to Ms. Bolden. Ms. Bolden was told by the Respondent that his address was 321 Park Avenue, which she learned, upon trying to find him, was the County Courthouse. Including the check just referred to, Respondent was paid a total of approximately $450.00 by Ms. Bolden for his professional services. No evidence of any services by the Respondent on behalf of Ms. Bolden was shown.

Warden Ted Logan, of the Mabel Bassett Correctional Facility, confronted the Respondent about his being under suspension, which he denied. Warden Logan further confronted the Respondent concerning the check belonging to Ms. Bolden and informed the Respondent that the Department of Corrections Regulations required that funds earned by inmates be handled by the Correctional Facility and certain deductions required by law be withheld from the check. The Respondent did not return the check or any portion thereof to Ms. Bolden or to the Facility after being advised of this information.

Ms. Collins and Ms. Bolden were both convicted felons, but there was no evidence to contradict their sworn testimony, and no evidence in defense or mitigation of this Count was presented by the Respondent.

## COUNTS 6 AND 7

Counts 6 and 7 were stricken because no evidence was offered by either party.

## COUNT 8

The Respondent obtained goods and services from one Leroy Humphrey, d/b/a

Humphrey Gulf Service, which totaled $128.75. The Respondent sent a check to Mr. Humphrey for the sum stated, but when the check was presented to the Fidelity Bank, upon which the check was drawn, the check was dishonored, due to insufficient funds. Humphrey presented the check to the bank twice more, but on each occasion with the same result. On the date the check was written, April 1, 1978, the Respondent's account was overdrawn some $65.00. A deposit was made by the Respondent in the amount of $150.00 on April 4th, three days after the check was written. However, due to other checks, there were not sufficient funds to pay the check in question. Mr. Humphrey still has not been paid for the goods and services provided.

The Respondent presented no evidence in defense or mitigation of this Count.

Having adopted the above Findings of Fact as being supported by the record, we now address the legal issues raised in the proceedings before us.

■ First, we address Respondent's contention that it was improper for the Bar to present evidence of alleged violations which occurred as long as five years prior to the hearing. The Respondent postulates that the passage of time would constitute laches; thus, we assume, Respondent would have us impose some equitable statute of limitations. This Court does not take lightly charges against a member of the Bar, and in imposing disciplinary measures this Court wants the entire record of an attorney's professional conduct before it.[2] The record should be scrutinized to determine whether the alleged offense giving rise to charges of misconduct was a mere blotch on an otherwise untainted career, or just one long series of questionable ethical actions. For this reason, this Court deems it inappropriate that an arbitrary statute of limitations on alleged attorney misconduct be imposed.

Additionally, we find no merit to Respondent's laches argument, because the Re-

**2.** *State ex rel. Oklahoma Bar Association v. Hensley*, 560 P.2d 567 (Okl.1977).

spondent, for at least a year and a half, did not apprise the Bar Association of his whereabouts. During that period, several attempts were made by the Bar to locate the Respondent. Despite the Bar Association's efforts, Respondent could not be located during that period.

Article 9, Section 9, of the Rules Creating and Controlling the Oklahoma Bar Association, states:

"The fact that certain acts or unprofessional conduct may at times have remained unchallenged shall not impair the jurisdiction of this Court nor excuse a wrongdoer."

The record before us indicates that the Respondent made no effort to directly rebut the charges in evidence against him. Respondent's only attempt at mitigating the charges was through his cross-examination, which did not have the desired effect. Accordingly, we find no basis, in the record before us, upon which the charges against Respondent should be mitigated. Having found that there are no mitigating factors in this case, we now determine what disciplinary rulings of the Code of Professional Responsibility Respondent has violated.

The facts under Count 1 show that the Respondent did in fact defraud an innkeeper. We find such conduct to be violative of DR 1–102(A)(3), (4), and (6), which provide:

"DR 1–102. Misconduct.

(A) A lawyer shall not:

\*    \*    \*    \*    \*    \*

(3) Engage in illegal conduct involving moral turpitude.

(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

\*    \*    \*    \*    \*    \*

(6) Engage in any other conduct that adversely reflects on his fitness to practice law."

Clearly, the defrauding of an innkeeper involved moral turpitude, fraud, deceit, and misrepresentation. Additionally, such conduct on the part of the Respondent adversely reflects on his fitness to practice law.

Under the charges in Counts 2 and 8, the Respondent obtained cash and merchandise, goods, and services by means of false and bogus checks, as the checks were not honored because Respondent had insufficient funds to cover them. The intentional making of such checks constitutes a crime in the State of Oklahoma under the provisions of 21 O.S. §§ 1541.1, et seq., and, additionally, the intentional conduct of Respondent constitutes a violation of DR 1–102(A)(3), (4), and (6), quoted above.

In Count 3, Respondent is charged with obtaining payment for professional services to be rendered, and with subsequently wholly failing to perform such services. Additionally, upon being discharged by his client, Respondent promised to partially reimburse his client, but made no effort to reimburse in any amount. Such conduct, we hold, violates the provisions of DR 1–102(4) and (6), and Subsection (5) of that same DR, which provides:

"A lawyer shall not:

\*    \*    \*    \*    \*    \*

(5) Engage in conduct that is prejudicial to the administration of justice."

Additionally, we find that such conduct on the Respondent's part also violated the provisions of DR 6–101(A)(3) and DR 7–101(A)(1) and (2), which provide:

"DR6–101. Failing to Act Competently.

(A) A lawyer shall not:

\*    \*    \*    \*    \*    \*

(3) Neglect a legal matter entrusted to him."

"DR7–101. Representing a Client Zealously.

(A) A lawyer shall not intentionally:

(1) Fail to seek the lawful objectives of his client through reasonably available means permitted by law and the Disciplinary Rules, \* \* \*.

(2) Fail to carry out a contract of employment entered into with a client for professional services, \* \* \*."

The charges against Respondent under Count 3 similarly involve payments for shirked services, and thus violate the same

disciplinary rulings cited above. Such violations are aggravated by the fact that Respondent solicited employment from one client, and in another instance intercepted a client's payroll check, inducing the client to endorse the check so that Respondent might take a portion of it for his fee, and return the rest to the client. In this instance, the Respondent not only retained the portion agreed upon as his fee, but also retained that portion of the check's proceeds which did not belong to him.

We also note that during the period of these transgressions, the Respondent had been suspended from the practice of law for failure to pay his dues.

We find that these multiple indiscretions violate DR 1–102(A)(4), (5), and (6); DR 6–101(A)(3), and DR 7–101(A)(1) and (2), all quoted above.

From the record, we can see that Respondent Warzyn has violated numerous ethical standards of his profession. We also see that his failure to abide by those ethical standards has not been the result of a single transgression. Rather, the record shows that Respondent Warzyn has, for an extended period of time, failed to abide by the Code of Professional Responsibility. Because of this, and because of the severity of the violations involved, we hold that Respondent Warzyn should be disciplined. It is important to recognize that the attorney-client relationship is one of the highest trust and confidence, requiring that an attorney's dealings with his client be characterized by the utmost candor and fairness.[3]

Because of this, we must impose strict standards upon the members of this profession.

Further, the primary purpose of discipline in the profession is not punishment, but purification of the Bar, and protection of the courts and the general public.[4] We would be remiss in our duties to our profession, and to the public as well, if we were to allow the Respondent to continue to practice law before the courts of this State.

Accordingly, it is the order of this Court that the Respondent, Joseph Seymour Warzyn, be disbarred from the practice of law, his license to practice law is revoked and cancelled, and his name stricken from the roll of attorneys authorized to practice law in the State of Oklahoma.

THE TRIAL AUTHORITY'S FINDINGS OF FACT ADOPTED AS BEING SUPPORTED BY THE EVIDENCE, AND RESPONDENT DISBARRED.

All Justices concur.

---

3.  State ex rel. Oklahoma Bar Association v. Hatcher, 452 P.2d 150 (Okl.1969).

4.  State ex rel. Oklahoma Bar Association v. Denton, 598 P.2d 663 (Okl.1979).