STATE of Oklahoma, ex rel., OKLA-HOMA BAR ASSOCIATION, Complainant,

v.

Norman D. PERKINS, Respondent.

SCBD No. 3412.

Supreme Court of Oklahoma.

June 7, 1988.

---

12. *Finerty v. First National Bank of Duncan,* 92 Okla. 102, 218 P. 859 (1923).

Alan B. Foster, Asst. Gen. Counsel, Oklahoma Bar Ass'n, Oklahoma City, for complainant.

Norman Perkins, Hennessey, pro se.

SUMMERS, Justice.

The Oklahoma Bar Association alleged three counts of misconduct by the respondent, Norman Perkins. All three counts allege commingling of clients' funds and the conversion of the funds by Perkins for his own use. The Professional Responsibility Tribunal found that Perkins did not maintain a trust account, had received clients' funds, and had utilized the funds for his own personal benefit and gain. The Tribunal also found that Perkins had refused and/or been unable to return a client's funds upon demand, and that his client had suffered a monetary loss. The Tribunal recommended that Perkins be disbarred. However, before reaching the merits of the disciplinary proceeding, Perkins' purported resignations from the Bar Association must be examined.

### RESPONDENTS' RESIGNATIONS

The hearing before the trial panel occurred on November 19 and 20, 1987. On November 12, 1987, Perkins filed a motion to continue the trial with an attached resignation pending disciplinary proceedings. The Professional Responsibility Commission did not file the resignation in this Court. The resignation, executed on November 5, 1987, stated that it should become effective on December 21, 1987.

This Court requested supplemental briefs on the issue of the effect, if any, of the respondent's letter of resignation. In response, Perkins filed an additional resignation stating an effective date of August 15, 1988. Perkins' brief states that: (1) he has not been taking any additional legal work which requires a long period of time to complete and; (2) he has been trying to close pending cases, "[h]owever there are several cases which will require a period of attention by respondent." The respondent states with respect to these cases:

"These are cases already paid for by the client. If the client had to have a new attorney at this point, with new fees, it would be a real or impossible hardship for the client."

■ The Rules creating and controlling the Oklahoma Bar Association contain the following provision:

"(a) Any member may resign his membership in the Association by filing with the Executive Director a written resignation, *whereupon he shall automatically cease to be a member and shall not thereafter be entitled to the privileges and advantages of membership in the Association.* The Executive Director shall publicize the fact of resignation and shall cause a record thereof to be made in the records of the Association and of the Clerk." 5 O.S.1981, Ch. 1, App. 1, Art. II, § 3.

This provision provides that upon the filing of a resignation with the Executive Director the individual automatically ceases to be a member of the Bar Association. Where an individual automatically ceases to be a member of the Bar Association, that person is no longer licensed to practice law in Oklahoma, 5 O.S.1981, Ch. 1, App. 1, Art. II, § 1.

■ The effective date of a resignation is upon filing the resignation with the Executive Director. A resignation with a stated effective date at some time thereafter is not contemplated by the Rules nor authorized by case law. We have accepted resignations from attorneys in the course of disciplinary proceedings because Rule 8.1 so provides. In so doing we have approved such resignations effective the date they were executed. See *State ex rel. OBA v. Coleman,* 723 P.2d 266 (Okl.1986). We have also accepted resignations and approved the same retroactively to an earlier date of interim suspension, in an effort to align the resignation with the first date the individual was no longer able to practice law. *State ex rel. OBA v. Smith,* 58 OBJ 283 (Okl.1987); *State ex rel. OBA v. Page,* 754 P.2d 878 (Okl.1988).

██ We do not consider a proferred resignation which is stated to take effect at some future date to be a resignation within the meaning of Rule 8.1 requiring our acceptance of same. We accordingly decline to accept the resignations as tendered.

## DISCIPLINARY PROCEEDING

This Court conducts an independent review of the evidence submitted to the trial panel of the Tribunal. *State ex rel., Oklahoma Bar Association v. Raskin,* 642 P.2d 262, 265–266 (Okl.1982). We find clear and convincing evidence to establish that Perkins commingled clients' funds, utilized clients' funds for his own personal benefit, and that a client has suffered a monetary loss due to his actions.

## COUNT I

Arley O. May died in March, 1977, and Perkins was retained by the widow, Susie May, to probate the estate. Perkins informed Susie May that he needed $30,500.00 to pay estate taxes, and she gave him checks for $25,000.00 and $5,500.00 [1] on July 7, 1977. Perkins then deposited on the same day the $25,000.00 check into his personal account, retaining $1,000.00 in cash from the deposit. Perkins utilized the check for $5,500.00 to make a payment on his personal loan at the Farmers and Merchants National Bank, Hennessey, Oklahoma. Susie May subsequently paid Perkins $7,000.00 as an attorney's fee for the probate proceeding. During the summer of 1977 the personal account of Perkins was periodically overdrawn, and he paid checks from the account for personal expenses. Perkins did not pay the estate taxes and approximately five years later he remitted the amount of $30,500.00 to Susie May by two separate checks drawn on his personal account dated May 19, 1982 and June 30, 1982.

## COUNT II

On September 28, 1984, Perkins received a check for a payment on a note, for and on behalf of his client Darl Dowell, in the amount of $15,145.69. On October 1, 1984, Perkins utilized the check to deposit $7,145.69 into his personal account, retained $2,000.00 in cash, and purchased a cashier's check in the amount of $6,000.00. On October 2, 1984, the client died and Perkins was retained to probate the estate by Jay Dowell. In April of 1985, Jay Dowell contacted Perkins inquiring about the payment on the note, and Jay Dowell was informed by Perkins that the sum of $15,-145.69 was retained as an attorney's fee pursuant to an oral agreement between Perkins and the deceased, Darl Dowell. Jay Dowell received a check from Perkins in May of 1985 for $15,145.69, postdated June 10, 1985. The check was not honored by the bank after it was deposited on June 10, 1985. Due to the efforts of new counsel for the estate, Perkins paid $15,145.69 to the estate through a series of unequal payments, with the final payment received on September 6, 1985.

Perkins received a check on or about December 17, 1984, for and on behalf of Myrth Dowell, in the amount of $57,687.46, representing proceeds from a life insurance policy on Darl Dowell, with Myrth Dowell as the beneficiary. Perkins deposited the $57,687.46 into his personal account and did not notify Myrth Dowell of the check. Myrth Dowell testified that the endorsement on the check was not her signature. Perkins did not turn over the funds to Myrth Dowell until after she contacted him inquiring about the funds. He paid to her the $57,687.46 with interest, by a check dated April 11, 1985, drawn on his personal account. Perkins made personal and business expenditures from his personal account in December 1984, and January, February, and March 1985.

## COUNT III

In the fall of 1983 C.D. Ball and his wife retained Perkins to represent them rele-

---

1. Susie May testified that the $5,500.00 check was to pay estate taxes. Tr. at 76. Perkins testified at his deposition that the $5,500.00 was for an attorney's fee. The face of the $5,500.00 check bears the notation "tax and settlement," which Susie May testified was not her handwriting. Tr. at 67–68.

vant to their federal and state tax problems. Perkins also assisted the Balls with a bankruptcy proceeding. Perkins represented to the Balls that he would attempt to negotiate a settlement of their 1981 tax liability. In accordance with Perkins' advice, the Balls delivered the sums of $45,-000.00 and $69,632.00 in December 1983 and February 1984, to Perkins for him to pay the 1981 tax liability of the Balls. Perkins deposited the $45,000.00 into his personal account retaining $2,000.00 in cash and deposited the $69,632.00 into his personal account retaining $5,000.00 in cash. His account was utilized for personal and business expenses between December 1983 and March 1984.

Perkins did not pay any funds for the outstanding tax indebtedness of the Balls. The Internal Revenue Service contacted the Balls in April of 1987 requesting payment for the 1981 taxes. Perkins did not return the Balls' funds upon their demand through new counsel. Perkins made a $30,000.00 payment and signed a promissory note for $122,842.68 to repay the Balls with interest. Some, but not all of the required payments on the note had been paid when due, by the time of the hearing before the trial panel.

### Assignments of Error

#### I. Statute of Limitations

■ The respondent asserts that more than one year had passed between the filing of the grievance on Count I and charges being filed by the General Counsel, and that Count I is barred by the statute of limitations.[2] In *State ex rel. Oklahoma Bar Association v. Warzyn,* 624 P.2d 1068 (Okl.1981) the court stated the following:

"This Court does not take lightly charges against a member of the Bar, and in imposing disciplinary measures this Court wants the entire record of an attorney before it. The record should be scrutinized to determine whether the al-

leged offense giving rise to charges of misconduct was a mere blotch on an otherwise untainted career, or just one long series of questionable ethical actions. For this reason, this Court deems it inappropriate that an arbitrary statute of limitations on alleged attorney misconduct be imposed." *Id.* 624 P.2d at 1071.

In *State ex rel. Oklahoma Bar Association v. Lowe,* 640 P.2d 1361 (Okl.1982) we stated the following.

"The eventual disposition of Bar matters is often dependent on more than one episode of misconduct. The public's interest in trustworthy legal representation is best protected by a consideration of an attorney's activities over a span of time.

The above position should not be interpreted as a blanket prescription of accountability for all deeds, no matter how old. An attorney may present evidence of prejudice caused by long delays." *Id.* 640 P.2d at 1362.

A grievance was received by the General Counsel of the Oklahoma Bar Association on March 7, 1984, from Susie May and her daughters. The General Counsel received Perkins' response on May 4, 1984. The formal written complaint was filed in the Supreme Court on May 11, 1987.

In *State ex rel. Oklahoma Bar Association v. Lowe,* supra, we observed that "some counts had been filed for as long as three years before the hearing." *Id.* 640 P.2d at 1362. We later explained that "in the absence of any proof of even minimal prejudice, the public interest in the ethical practice of law outweighs any blind devotion to procedure." *Id.* Perkins has not offered any proof of even minimal prejudice caused by the delay.

#### II. Admission of Respondent's Depositions

Perkins asserts that his depositions taken by the General Counsel should not have

---

**2.** Perkins relies solely on *In re Evans,* 72 Okl. 215, 179 P. 922 (1919) to support his argument. His reliance on this case is misplaced. The court in *Evans,* relied on a statute of limitations for the suspension or removal of attorneys. As explained by *Evans,* the statute of limitations

involved "was repealed by the act adopting the Revised Laws of 1910 (Laws 1910–11, c. 39), because same was omitted therefrom." *Id.* 179 P. at 924. The statute repealed in 1910 is not relevant to the present proceedings.

been admitted into evidence and considered by the trial panel.[3] Perkins contends that because the depositions were not admissible no stipulation could be entered admitting the depositions.

The trial panel properly admitted the depositions of Perkins as exhibits. Perkins entered into a stipulation admitting the depositions. In *Nanonka v. Hoskins*, 645 P.2d 507 (Okl.1982), we stated the following.

> "Stipulations are agreements between counsel concerning business before the court and are favored as means to shorten, clarify or settle litigation." *Id.* 645 P.2d at 508.

A party on appeal is not permitted to secure a reversal of a judgment based on invited error. *Ferrell v. State Department of Highways*, 387 P.2d 129 (Okl. 1963). Perkins' assignment of error in this original proceeding, based upon an attack of his own stipulation, if allowed, would defeat the purpose of allowing facts to be stipulated in proceedings before the Trial Panel, as authorized by 5 O.S.1981 Ch. 1, App. 1–A, Rule 6.10.

The depositions could have been properly admitted without the stipulation. The reception of evidence in a disciplinary proceeding is governed generally by the rules in civil proceedings. 5 O.S.1981 Ch. 1, App. 1–A Rule 6.12(a). The admission of the deposition of a party in a civil proceeding is expressly authorized by 12 O.S.Supp. 1982 § 3209(A)(2) which states:

> "*The deposition of a party* or of anyone who at the time of taking the deposition was an officer, director or managing agent, or a person designated under subsection C, paragraph 6 of Section 7 or subsection A of Section 8 of the Discovery Code to testify on behalf of a public or private corporation, partnership or association or governmental agency which is a party *may be used for any purpose.*" (Emphasis added)

Perkins' answer to the amended complaint denies several allegations of fact. The depositions contain Perkins' admissions as to the type of bank accounts he had and his practice of depositing client's funds into his personal account. His deposition reveals that he did not open a trust account until a few months prior to July 6, 1987. Perkins' admissions are relevant, and they are admissible as statements offered against a party. 12 O.S.1981 § 2801(4)(b). Thus, Perkins' second assignment or error is without merit.

### III. The Role of the Supreme Court in the Grievance Process

Perkins' third assignment of error is that the decision to file a formal complaint and the investigation of attorney misconduct are duties of the Supreme Court which cannot be delegated to the Oklahoma Bar Association. Perkins apparently desires this Court to be both prosecutor and judge. This Court has responsibility for functions which are legislative, prosecutorial, and adjudicatory in controlling and regulating the practice of law, and the discipline of legal practitioners. *Tweedy v. Oklahoma Bar Association*, 624 P.2d 1049 (Okl.1981). However, the decision to investigate a grievance and file a formal complaint will not be performed by this Court due to the minimum standards of due process. *Id.* 624 P.2d at 1054–1055. Perkins' third assignment of error is without merit.

### IV. Remaining Assignments of Error

The remaining assignments of error argue that the clients' funds were not in jeopardy, that Perkins paid his clients their funds when requested, and that he was prejudiced by the opposing counsel's argument before the trial panel.

The uncontradicted testimony indicates that Perkins received $114,632.00 from the Balls in 1983 and 1984 to pay their tax liability. Perkins deposited this amount into his personal account minus $7,000.00 he retained in cash. Three years later the tax liability had not been paid, and when the Balls requested the return of their money, Perkins did not return it, but en-

---

3. Perkins relies solely on 12 O.S. 1981 § 433 to support his argument. His reliance on this stat- ute is misplaced, as § 433 was repealed by Laws 1982, c. 198, § 16.

tered into an agreement establishing a payment schedule.

5 O.S.1981, Ch. 1, App. 1–A, Rule 1.4(b) states in part:

"Where money or other property has been entrusted to any attorney for a specific purpose, he must apply it to that purpose. He may not avail himself of a counterclaim or setoff for fees against any money or other property of his client coming into his hands for such a specific purpose, and a refusal to account for and deliver over such money or property upon demand shall be deemed a conversion."

 Perkins admits that the amount of $114,632.00 was entrusted to him by the Balls for the specific purpose of paying their tax liability. Perkins did not deliver this sum of $114,632.00 to the Balls upon their demand. Restitution of a client's funds by payments on a promissory note is not delivery of money "upon demand". Perkins utilized the Balls' funds for an unauthorized purpose and violated Rule 1.4(b).

 Perkins did not preserve the identity of the Balls' funds. 5 O.S.1981 Ch. 1, App. 3, DR 9–102(A) and (B) states:

"(A) All Funds of Client paid to a lawyer or law firm, excluding advances for costs and expenses, shall be deposited in one or more identifiable bank or savings and loan association accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:

(1) Funds reasonably sufficient to pay bank charges may be deposited therein.

(2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.

(B) A lawyer shall:

(1) Promptly notify a client of the receipt of his funds, securities or other properties.

(2) Identify and label securities and properties of a client promptly upon receipt and place them in a safe deposit box or other place of safekeeping as soon as possible.

(3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.

(4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive."

Thus, Perkins violated DR 9–102(A) and (B) by depositing the money in his personal account and by failing to promptly pay or deliver to the Balls their funds.

Perkins received a check for and on behalf of his client, Darl Dowell, in the amount of $15,145.69 for payment on a note. This amount was retained by Perkins as a setoff for fees. Such action is expressly prohibited. 5 O.S.1981, Ch. 1, App. 1–A, Rule 1.4(b). The commingling of Dowell's funds violates DR 9–102(A). Perkins' actions in tendering the postdated check for $15,145.69 and the subsequent payment schedule violated DR 9–102(B).

Perkins did not notify Myrth Dowell of his receipt of funds in the amount of $57,-687.46 until her inquiry into the matter a few months subsequent to his receipt of the funds. Such action violates DR 9–102(B)(1). The commingling of these funds violates DR 9–102(A). The unauthorized utilization of these funds by depositing the funds into his personal account violates 5 O.S.1981, Ch. 1, App. 1–A, Rule 1.4(b).

Perkins received $30,500.00 from Susie May to pay estate taxes. He violated DR 9–102(A) by commingling these funds, and violated Rule 1.4(b) by the unauthorized use of the funds.

Perkins' conduct in violating DR 9–102(A) and (B) also violates DR 1–102(A)(1),

which states that "[a] lawyer shall not [v]iolate a Disciplinary Rule."

Perkins' actions in depositing clients' funds into his personal account, utilizing a client's funds to pay a personal loan, the unauthorized use of clients' funds, and the difficulties experienced by the Balls and Dowells in regaining their funds, demonstrate that the remaining assignments of error are without merit. We find the evidence of Perkins' misconduct to be overwhelming and that the remarks of opposing counsel did not prejudice the trial panel.

### Discipline

■ In *State ex rel. Oklahoma Bar Association v. Raskin*, 642 P.2d 262 (Okl. 1982) we stated the following.

"In their daily work lawyers commonly come into clients' funds. The trust placed in the lawyer owes its origin to the special professional status he occupies as a licensed practitioner. Public confidence in the practitioner is essential to the proper functioning of the profession. Few breaches of ethics are as serious as the act of commingling a client's funds and the unwarranted use of his money." *Id.* 642 P.2d at 267.

Perkins' acts are serious breaches of ethics. The evidence demonstrates that on more than one occasion Perkins commingled a client's funds with his own and used his client's money for an unauthorized purpose. The evidence demonstrates that when the Balls requested the return of their funds he did not promptly repay the funds. Perkins stopped payment on a postdated check when returning funds to the Dowell estate, and paid out the amount over several months.

"A lawyer's license is a certificate of professional fitness to deal with the public as a practitioner of law. That fitness stands terminated after a single act of dishonest dealing with the client's funds." *Id.* 642 P.2d at 268.

Perkins contends that he did not convert funds because he did not have an intent to "inflict injury" on his clients and that money was always available to return to his clients. The case of *Matter of Wilson*, 81 N.J. 451, 409 A.2d 1153 (1979) has been cited with approval by this Court. *State ex rel. Oklahoma Bar Association v. Raskin*, 642 P.2d 262 (Okl.1982); *State. ex. rel. Oklahoma Bar Association v. Moore*, 741 P.2d 445 (Okl.1987). In *Matter of Wilson*, supra, the Court states:

"Lawyers who 'borrow' may, it is true, be less culpable than those who had no intent to repay, but the difference is negligible in this connection. Banks do not rehire tellers who 'borrow' depositors' funds. Our professional standards, if anything, should be higher. Lawyers are more than fiduciaries: they are representatives of a profession and officers of this Court.

The overwhelming majority of misappropriation cases involve lawyers who undoubtedly intended to return the funds. They misappropriate initially with precisely such intent. Anticipated money for repayment fails to materialize. Other clients' trust funds are then used for 'restitution,' and the initial embezzlement spawns many more. Wholesale exemption from strict discipline for misappropriation would result if such 'borrowing' were excused." *Id.* 409 A.2d at 1156.

■ The respondent, in his brief to this Court, appears to misunderstand the gravity of his conduct. Where a client gives money to a lawyer for a specific purpose, such as payment of the client's taxes, those funds belong to client and not the lawyer. A practicing lawyer should not need this Court to tell him he can't take a client's money, given to him to be held in trust, and use it for personal expenses or to pay personal loans. See *State ex rel. Oklahoma Bar Association v. Raskin*, supra.

The imposition of severe discipline is required in misappropriation cases. *Id.* 642 P.2d at 268. We have examined the record for mitigating circumstances, and find none.

We order that Perkins be disbarred and his name stricken from the roll of attorneys. The Bar Association filed an application to assess costs against Perkins in the amount of $3,246.55. The application is not

contested. Our review of the application indicates that it should be granted. The cost of the transcripts, investigation, and proceedings shall be borne by Perkins. The amount of $3,246.55 is to be paid immediately after this opinion becomes final.

DOOLIN, C.J., HARGRAVE, V.C.J., and LAVENDER, SIMMS and SUMMERS, JJ., concur.

OPALA, J., I concur in result insofar as the opinion rejects the tendered resignation; I concur in the remainder of the court's pronouncement.

KAUGER, J., concurs in result.

WILSON, J., dissents, I would accept the proferred resignation.

HODGES, J., not participating.