## In re SNODGRASS.

No. 24199.   Nov. 7, 1933.

J. H. Everest, Wade H. Loofbourrow, and John H. Cantrell, for the State Bar of Oklahoma.

Stansell Whiteside, P. K. Morrill, O. P. Estes, and J. L. Gowdy, for respondent.

CULLISON, V. C. J. The record shows that while Clay Snodgrass, respondent herein, was a practicing attorney, two charges were filed against him praying his disbarment. The first complaint discloses that Snodgrass was charged with misappropriating $350 of funds belonging to W. B. Stutts of Thornton, Tex. The second complaint discloses that Snodgrass was charged with misappropriation of $333.33 belonging to O. B. Siler.

A hearing on the first complaint was had before the administrative council. The council recommended to the Board of Governors that Snodgrass be disbarred. The Board of Governors transmitted the record in the case to this court, together with its recommendation that Snodgrass be disbarred. Snodgrass did not appeal from the recommendations of the Board of Governors. This court, on December 21, 1931, affirmed the recommendation of the Board of Governors, thereby disbarring the respondent.

A hearing was had on a second complaint filed. Said board recommended the respondent, Snodgrass, be suspended for a period of one year. Snodgrass having been disbarred, no action could be taken to suspend him.

The judgment of this court disbarring Clay Snodgrass having become final December 21, 1931, the question of disbarment is not now before this court. Further comments regard-

ing the disbarment proceedings are unnecessary.

On June 15, 1932, Snodgrass filed an application for reinstatement. A hearing was had thereon and an order made by the Board of Governors denying reinstatement because the application for reinstatement came too close upon the order of disbarment.

It is apparent that but one question is before this court for adjudication, viz., Should respondent be reinstated? It was said in State ex rel. Dabney, Atty. Gen., v. Ledbetter, 162 Okla. 20, 18 P. (2d) 1085:

"An application for reinstatement to the Bar of Oklahoma is addressed to the sound discretion of this court upon the record before it."

The board refused to reinstate respondent for the sole and only reason respondent made application to be reinstated too soon after he was disbarred.

This court finds the respondent quite reticent in filing his application for reinstatement. The record further shows that Snodgrass ceased the practice of law shortly after May 30, 1931, when he received notice from the Board of Governors that it had recommended his disbarment. Nearly two years have now elapsed since respondent ceased the practice of law.

We find in the brief of respondent the following statements relating to respondent's life and character:

"The respondent, Clay Snodgrass, was admitted to the practice of law at the age of 21. He is now 29 years of age. His father was a distinguished lawyer; his family for several hundred years back have been in the legal profession. He is endowed with extraordinary natural ability for his profession, and possesses an unusually brilliant mind, which was readily adapted in the practice of law. His practice was very lucrative during his few years before the bar.

"In 1929, with no family ties to restrain him and with bad associates to assist him, he began to lead what is commonly termed in the parlance of the day, 'a wild life.' His misconduct in this respect was largely in drinking and gambling, and while it seems to have had little or no effect upon his ability before the courts, did cause his friends and associates in his profession anxiety."

The above statement of facts are accredited to Stansell Whiteside, P. K. Morrill, O. P. Estes, and J. L. Gowdy, attorneys for respondent.

The board made findings of facts, from which we quote in part:

"Many excellent character witnesses took the stand and testified on behalf of Mr. Snodgrass, each stating that he believed applicant had learned his lesson and if reinstated would never again be guilty of misconduct in the handling of his client's money. That they believe, on account of his youth, inherent honesty, and ability, he should be given another chance. That he has reformed, quit drinking, gambling, and associating with the gang formerly his companions. That, in their opinion, Clay Snodgrass has already been sufficiently punished for the offenses committed. There can be no doubt as to the sincerity and honesty of their belief. They desire to see this young man reinstated, given another chance, firmly convinced in the belief that he is capable and will make good."

And further:

"He has always borne a reputation in the community of his residence for honesty, ability as a lawyer, and as an ethical practitioner of the law, courteous to both judge and opposing counsel."

It is pleasing and helpful to this court to note the large circle of friends who voluntarily recommend the reinstatement of respondent as a member of the State Bar. The number of those who recommend respondent's restoration to the practice of law are so numerous and their character so well known to the members of this court that we deem it unnecessary to rehearse in detail their recommendations. Suffice to say, they consist of judges, ex-judges, and a score of practicing attorneys whose characters are above reproach.

We have read the answer brief of the State Bar of Oklahoma. On page 10 of said brief we find the following statement in part:

"Second: At the outset this brief is not written or prepared by any of the members of the Board of Governors, but is wholly the result of independent search, study, and consideration of the entire record now pending before the Supreme Court."

We are inclined to accept the above statement as true. We think, however, it would be immeasurably helpful to this court if the members of the Board of Governors and the legal counsel of said board would give personal attention to the briefs filed in this court.

Having carefully read the brief of the Board of Governors filed herein, we are convinced the writer thereof has particularly schooled himself in poetic lore and epigrammatic expressions. The court appreciates the wholesome advice and suggestions appearing in the answer brief of the Board of Governors filed herein, but the court is in duty

bound to determine, from the pleadings, facts, and circumstances in the case, whether or not the respondent should be reinstated as a member of the Oklahoma State Bar, and it is the duty of brief writers to assist the court in arriving at a proper conclusion.

It is said in the brief of the Board of Governors:

"The rules of the Board of Governors, as promulgated by the Supreme Court, are silent as to when a petition for reinstatement can be filed."

This court said in State ex rel. Dabney, Atty. Gen., v. Ledbetter, 162 Okla. 20, 18 P. (2d) 1085:

"The application for reinstatement to the bar of Oklahoma is addressed to the sound discretion of this court upon the record before it."

It is a well-recognized rule of law that the proper method and manner of establishing the character and trustworthiness of one seeking reinstatement to the bar is by recommendations and statements of those who are in position to know and judge the petitioner. In re Treadwell (Cal.) 45 P. 993.

No harsh rule to reinstate attorneys to the practice of law who have been disbarred has been adopted by this court. This court will in every instance base its conclusions and judgment upon the particular facts and circumstances involved in the case, and will at all times, where the evidence is clear, cogent, and convincing, render such judgment as to the court seems proper.

It is admitted there is no rule by the Governors or by law fixing the time which should elapse between disbarment and reinstatement of an attorney. We are of opinion, and hold, "time" between disbarment and reinstatement of an attorney is not necessarily an essence in an action to restore a disbarred attorney to the practice of law.

The record shows respondent has paid to the complaining witness the full amount due him; that respondent ceased the practice of law as soon as the complaint was served upon him; that respondent made restitution before the order recommending disbarment was made; that respondent's professional associates, judges, lawyers, and many friends, have testified to his splendid legal acquirements and to his high professional, social, and moral standing.

We further add there is no censure or criticism against respondent's character and no opposition to his reinstatement to the practice of the law. Notwithstanding the above record, it is contended that respondent should not be reinstated for the sole reason: "Respondent made application to be reinstated too soon after he was disbarred." In support of the above contention many authorities are cited.

We have read very carefully the entire record, including the briefs filed in the case, but will not attempt an extended discussion of the authorities. We recognize many excellent suggestions embodied in the decisions cited, but none of them fix any definite time when an application for reinstatement should be filed after disbarment.

The poetic statements of Shakespeare and the sayings of Emerson as to the importance of time in such cases are cited for our consideration. These distinguished writers expressed themselves as follows:

"Time's glory is to calm contending kings:
To unmask falsehood and bring truth to light."

We have no criticism to offer against the logic expressed by the great poet in the above quotations, but we suggest that Shakespeare has written more kindly and sincerely still, and he recognizes an infallible rule, which this court is desirous of following in the instant case:

"The quality of mercy is not strained;
It droppeth as the gentle rain from heaven
Upon the place beneath: it is twice blest,—
It blesseth him that gives and him that takes:
'Tis mightiest in the mightiest; it becomes
The throned monarch better than his crown:
His sceptre shows the force of temporal power,
The attribute to awe and majesty,
Wherein doth sit the dread and fear of kings;
But mercy is above this sceptred sway,—
It is enthroned in the hearts of kings.
It is an attribute to God himself;
And earthly power doth then show likest God's,
When mercy seasons justice."

We are also confronted with citations from Holy Writ:

"There is a time for all purposes." Eccl. 3:1.

In the instant case this court recognizes and will follow the divine rule above stated. The case is before us on appeal, and we think the time has arrived in which the court should make final disposition of said case. This court is proud to state that it recognizes and seeks to be governed by sacred law, which law the courts of all ages recognized as the moral law.

Justinian, recognized as one of the first expounders of the moral law, has given us a faultless definition of said law:

"It (moral law) consists in the constant and perpetual wish to render to every one his due." The Essential Nature of Law, 165.

More beautiful and endearing still is the language of the lowly Nazarene, wherein he informs the inquisitive lawyer as to the fundamental principle involved in the moral law: "Love thy neighbor as thyself."

The court makes no complaint and has no criticism to offer against the Board of Governors of the State Bar. Upon the other hand, the court appreciates to a very high degree the excellent work of the board. Its investigations and recommendations are invaluable. They furnish a basis for adjudication of many perplexing cases which the court is required to settle. The court has no word of criticism to offer against any of the attorneys or officers of the board whose duty it is to appear before the court in these matters.

We especially commend the services and conduct of the young lawyer who appeared in behalf of the Board of Governors before the court in the instant case. He had no harsh words of condemnation against the respondent. His argument and conduct largely influenced the court that there was much merit in respondent's application to be reinstated as a member of the State Bar.

The court is of opinion, and holds: That upon the showing made and authorities cited the application should be granted. It is therefore ordered that the respondent. Clay Snodgrass, be and he is hereby reinstated as an attorney and counselor at law, and that his name be restored upon the roll of attorneys of this state.

RILEY, C. J., and SWINDALL, ANDREWS, McNEILL OSBORN, and BUSBY, JJ., concur. BAYLESS and WELCH JJ., absent.