**STATE of Oklahoma, ex rel., OKLAHOMA BAR ASSOCIATION, Complainant,**

*v.*

**Frank MISKOVSKY, III, Respondent.**

**OBAD No. 1009.**
**SCBD No. 3741.**

Supreme Court of Oklahoma.

March 17, 1992.

(Okla.1987).

John E. Douglas, Asst. Gen. Counsel, Oklahoma Bar Ass'n, Oklahoma City, for complainant.

Frank Miskovsky, III, pro se.

KAUGER, Justice.

The complainant, the Oklahoma Bar Association (Bar Association), alleged that the respondent, Frank Miskovsky, III (respondent), committed professional misconduct warranting disbarment. The trial panel found that the respondent had converted a client's funds and had misrepresented to the trial court and to opposing counsel the status of the funds violating Rule 1.4(b) of the Rules Governing Disciplinary Proceedings, 5 O.S.1981 Ch. 1, App. 1–A and Rule 1.15, and Rule 8.4(c) of Rules of Professional Conduct, 5 O.S.Supp.1988 Ch. 1, App. 3–A.[1] We find that the Bar Association es-

---

1. Rule 1.15, Rules of Professional Conduct, 5 O.S. Supp.1988 Ch. 1, App. 3–A, provides in pertinent part:

"(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state where the lawyer's office is situated, or elsewhere with the written consent of the client or third person. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

(c) When in the course of representation a lawyer is in possession of property in which both the lawyer and another person claim interests, the property shall be kept separate by the lawyer until there is an accounting and severance of their interests. If a dispute arises concerning their respective interests, the portion in dispute shall be kept separate by the lawyer until the dispute is resolved...."

Rule 1.4, Rules Governing Disciplinary Proceedings, 5 O.S.1981 Ch. 1, App. 1–A, provides in pertinent part:

"... (b) Where money or other property has been entrusted to any attorney for a specific purpose, he must apply it to that purpose. He may not avail himself of a counterclaim or setoff for fees against any money or other property of his client coming into his hands for such specific purpose, and a refusal to account for and deliver over such money or property upon demand shall be deemed a conversion. This does not apply to the reten-

tablished by clear and convincing evidence that the respondent converted funds which had been entrusted to him for a specific purpose, and that he knowingly misrepresented to the Court and opposing counsel the status of the funds which were subject to a lien. We also find that this is the third time that complaints concerning similar conduct have been before this Court and that such conduct warrants disbarment and the imposition of costs in the sum of $2,995.21.

## FACTS

Frank Miskovsky, III (respondent) is a duly licensed attorney and a member of the Oklahoma Bar Association who has twice been sanctioned by this Court. He represented Vernell Wickware (husband/client) in a contested divorce proceeding. On December 28, 1989, the trial court awarded the wife $5,400.00 consisting of an arrearage in temporary child support, $350.00 in temporary attorney fees, and $87.00 in costs. Annetta Wickware (wife) was awarded a lien against the husband's retirement fund in the amount of $5,887.00— the total of the arrearage including attorney fees and costs. The court provided that the lien would not accrue interest for sixty days, and it directed the respondent to prepare the necessary documents to obtain a waiver of the husband's qualified joint and survivor annuity and his consent to a lump sum payment from the Oklahoma City Housing Authority, to ensure payment of the lien.

On January 25, 1990, two retirement checks were issued to the husband in the amounts of $6,937.24 and $6,770.54 totalling $13,707.78. The evidence is unclear concerning the disposition of the funds. However, it is undisputed that on February 1, 1990, $5,700.00 was deposited in the respondent's trust account. The husband, who was illiterate, testified to conflicting versions of the facts. At his deposition, he could not recall receiving any money after the respondent deposited the money in the trust account. At the disciplinary proceeding, the husband testified that he received $3,000.00 or $4,000.00 the day the respondent helped him cash the retirement checks, and that approximately $4,000.00 was paid to the respondent for legal fees. He also testified that subsequently he asked Miskovsky for $4,800.00 from the trust account. Although the respondent claimed that he eventually gave the $5,700.00 in the trust account to the husband, he later testified that he might have taken some of the money. The checks written from the trust account were made either to the respondent or the payee line was left blank. The respondent could not document the distribution of the retirement funds.

After repeated demands failed to secure payment, the wife filed a citation of contempt against the respondent on March 15, 1990. On April 5, 1990, the respondent stated he would pay the arrearage, and on April 7, 1990, the respondent mailed a cashiers check to the wife's lawyer.

Apparently, because the respondent's dilatory payment caused the wife to lose an earnest money deposit on a house she sought to buy, she filed a complaint with the Oklahoma Bar Association. On August 30, 1991, the trial panel of the Bar Association issued its report with recommended findings of fact, conclusions of law, and proposed discipline.

The trial panel took judicial notice that the respondent had been previously suspended for three months and publicly reprimanded on October 30, 1990, [*State ex rel. Oklahoma Bar Ass'n v. Miskovsky*, 804 P.2d 434 (Okla.1990)] for failure to return money entrusted to him which he applied to his legal fees, and for altering a document after it had been filed with the court clerk.

tion of money or other property otherwise coming into the hands of a lawyer and upon which the lawyer has a valid lien for his services.

(c) Theft by conversion or otherwise of the funds of a client shall, if proved, result in disbarment...."

Rule 8.4, Rules of Professional Conduct, 5 O.S. Supp.1988 Ch. 1, App. 3–A, provides in pertinent part:

"It is professional misconduct for a lawyer to:

...

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation; ...."

It also noted that the respondent was accused of commingling and failure to pay funds entrusted for a specific purpose, misrepresentation, failure to account for funds, and failure to cooperate in the investigation of the bar complaint, in a pending disciplinary proceeding, SCBD ∂ 3666 in which the trial panel had recommended a six month suspension.[2] The trial panel found that the respondent's conduct required either disbarment or a substantial suspension, and it opted for a minimum suspension of five years.

THE BAR ASSOCIATION ESTABLISHED BY CLEAR AND CONVINCING EVIDENCE THAT MISKOVSKY FAILED TO KEEP RECORDS ON HIS TRUST FUND ACCOUNT, CONVERTED FUNDS WHICH WERE ENTRUSTED TO HIM FOR A SPECIFIC REASON, AND MISREPRESENTED THE STATUS OF THE FUNDS TO THE TRIAL COURT AND OPPOSING COUNSEL. THIS CONDUCT WARRANTS DISBARMENT AND THE IMPOSITION OF COSTS.

 Before we may impose discipline upon a lawyer, the charges must be established by clear and convincing evidence.[3] In a bar disciplinary proceeding, this Court as a licensing court, exercises exclusive original jurisdiction. Although, the trial panel's recommendations are afforded great weight, it is our responsibility to make the final *de novo* determination concerning discipline of Oklahoma lawyers.[4]

The Bar Association presented evidence, and the trial panel found that: 1) The respondent was unable to document how the retirement funds were disbursed—all the checks drawn on the trust account were either made out to Miskovsky or the payee was blank; 2) The respondent was ordered by the trial court to deliver the retirement funds to the wife and that he failed to do so until he was confronted with a citation for contempt; 3) Even if the respondent believed that a matter was still in dispute, he failed to keep the retirement funds separate until the dispute was settled; 4) The respondent converted the entrusted retirement funds either for his own use or for his client's use; 5) The respondent knowingly and wilfully engaged in conduct which was dishonest when he continued to misrepresent to the trial court and opposing counsel the status of the retirement funds; and 6) The imposition of discipline is warranted for violation of Rule 1.15 and Rule 8.4(c) of the Rules of Professional Conduct and Rule 1.4 of the Rules Governing Disciplinary Proceedings relating to the use of client funds and misrepresentation.[5]

On appeal, the Bar Association asserts that the discipline recommended by the trial panel of a five year suspension is too lenient. Its position is supported by this Court's jurisprudence. For example, in *State ex rel. Oklahoma Bar Ass'n v. Perkins,* 757 P.2d 825, 832 (Okla.1988), the lawyer failed to maintain a trust account; received and used clients' funds for his personal benefit and gain; and refused, or was unable to return a client's funds, resulting in a monetary loss to the client. Perkins was disbarred. Likewise, the respondent maintained a trust account, but he did not keep any records as to how the monies from that account were disbursed.

2. This Court decided SCBD # 3666 on September 17, 1991 and found that Miskovsky should be suspended for eighteen months. *State ex rel. Oklahoma Bar Ass'n v. Miskovsky,* 824 P.2d 1090 (Okla.1991).

3. Rule 6.12(c), Rules Governing Disciplinary Proceedings, 5 O.S.1981 Ch. 1, App. 1–A provides:

"(c) To warrant a finding against the respondent in a contested case, the charge or charges must be established by clear and convincing evidence, and at least two of the members of the Trial Panel must concur in the findings."

4. *State ex rel. Oklahoma Bar Ass'n v. LaCoste,* 813 P.2d 501, 503 (Okla.1991); *State ex rel. Oklahoma Bar Ass'n v. Mothershed,* 812 P.2d 382, 383 (Okla.1991); *State ex rel. Oklahoma Bar Ass'n v. Blackburn,* 812 P.2d 379, 382 (Okla.1991).

5. Rule 1.15, Rules of Professional Conduct, 5 O.S. Supp.1988 Ch. 1, App. 3–A, see note 1, supra; Rule 8.4(c), Rules of Professional Conduct, 5 O.S. Supp.1988 Ch. 1, App. 3–A, see note 1, supra; Rule 1.4, Rules Governing Disciplinary Proceedings, 5 O.S.1981 Ch. 1, App. 1–A, see note 1, supra.

The respondent also refused, or was unable to pay funds to the wife as instructed by the trial court, and the wife lost a $500.00 cash deposit on a home which she had intended to buy.

Another comparable situation was presented in *State ex rel. Oklahoma Bar Ass'n v. Moore*, 741 P.2d 445, 449 (Okla.1987); Moore misappropriated funds from two estates. When challenged: he did not turn over the funds to the estate; he did not furnish an accounting of the funds withdrawn; he misrepresented to the probate court and to his client concerning the handling of the funds; and he prepared a fraudulent tax release to the heirs and altered a check. Although the respondent did not prepare a fraudulent document or alter a check, he refused to transfer the retirement funds to the wife as ordered by the court until threatened with a contempt citation, and he misrepresented the handling of the funds to the trial court and opposing counsel.

*State ex rel. Okla. Bar Ass'n v. Peveto*, 730 P.2d 505 (Okla.1986), is also instructive. Peveto did not answer the complaint which alleged trust violations, neglect, incompetence, conflict of interest, misrepresentation, and failure to cooperate with the bar disciplinary investigation. Peveto had been previously suspended for one year. The Court found that with the enhancement of the previous suspension, disbarment was warranted.

*State ex rel. Okla. Bar Ass'n v. Raskin*, 642 P.2d 262 (Okla.1982), is the seminal case in this area. Raskin was to deposit funds into his trust account to pay for outstanding corporate taxes as well as the other·party's attorney fees. He failed to do so, but he represented that he had paid the taxes and the fees. Raskin was unable to document the disbursements of the funds, and he admitted that he had used them. Here, the respondent was to use the deposited trust funds for a specific purpose, and he failed to do so without any

documentation of the disbursements. Disbarment was imposed under similar circumstances in *Perkins, Moore, Peveto*, and *Raskin*. It is warranted here.

## CONCLUSION

This is the third disciplinary complaint filed against the respondent. On October 30, 1990, this Court found that Frank Miskovsky, III had failed to return a client's property entrusted to his care, and that he had altered a pleading to designate an attorney lien.[6] He was suspended for three months and publicly reprimanded. On September 17, 1991, we found that: the respondent had applied funds which had been entrusted to him for a specific purpose to his attorney fee; had deposited another check which was to pay for a client's fine into his account for fees and costs, and that he had commingled funds.[7] The respondent was suspended for eighteen months. All three disciplinary complaints have involved the mishandling of clients' funds and the failure to document the disbursement of those funds.

Public confidence in the practitioner is essential to the proper functioning of the profession. Few breaches of ethics are as serious as the acts of commingling and the unwarranted use of a client's money.[8] Maintenance of the public's confidence in this Court and in the bar as a whole requires the imposition of severe discipline in misappropriation cases. A lawyer's license is a certificate of professional fitness to deal with the public as a practitioner of law. That fitness stands terminated after any act of dishonesty dealing with a client's funds. Any other approach would rightly confuse or equate a lawyer's state franchise with a license to cheat the public.[9]

Rather than benefitting from his first suspension and reprimand in 1990, the respondent has continued to engage in a course of unprofessional conduct which

---

**6.** *State ex rel. Oklahoma Bar Association v. Miskovsky*, 804 P.2d 434 (Okla.1990).

**7.** *State ex rel. Oklahoma Bar Ass'n v. Miskovsky*, 824 P.2d 1090 (Okla.1991).

**8.** *State ex rel. Okla. Bar Ass'n v. Raskin*, 642 P.2d 262, 267 (Okla.1982).

**9.** *State ex rel. Oklahoma Bar Ass'n v. Perkins*, 757 P.2d 825, 832 (Okla.1988).

cannot be sanctioned by this Court. We find no extenuating or mitigating factors presented here. We, therefore, reject the recommendation of the trial panel that the respondent be suspended, and we order that Frank Miskovsky, III, be disbarred and that his name be stricken from the roll of attorneys. The costs of the proceedings in discipline in the amount of $2,995.21 shall be borne by the respondent.

RESPONDENT DISBARRED; COSTS IMPOSED.

LAVENDER, SIMMS, DOOLIN, HARGRAVE, ALMA WILSON and SUMMERS, JJ., concur.

OPALA, C.J., not participating.

HODGES, V.C.J., disqualified.