**STATE of Oklahoma, ex rel. OKLA-HOMA BAR ASSOCIATION, Complainant,**

v.

**Patrick H. LAVELLE, Respondent.**

SCBD Nos. 3774, 3965.

Supreme Court of Oklahoma.

Oct. 3, 1995.

Gloria Miller White, Mike Speegle, Oklahoma City, for Complainant.

Patrick H. Lavelle, Mustang, Oklahoma, pro se.

SIMMS, Justice:

Respondent, Patrick H. Lavelle, was the subject of two formal complaints filed by the Oklahoma Bar Association, Complainant.[1] In the Complaints, Complainant alleges that Respondent committed acts of professional misconduct which violate the Rules Governing Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A, and the Oklahoma Rules of Professional Conduct, 5 O.S.1991, Ch. 1, App. 3–A. In order to discipline a member of the bar for professional misconduct, this Court must perform a *de novo* review of the entire record and find that clear and convincing evidence shows that the attorney has en-

gaged in such misconduct. Rule 6.15 of the Rules of Professional Conduct; *State ex rel. Oklahoma Bar Ass'n v. Miskovsky*, 832 P.2d 814 (Okla.1992). We have conducted a *de novo* review of the entire record, and we find the clear and convincing evidence establishes that Respondent engaged in professional misconduct. We further find that this misconduct warrants disbarment.

### FIRST COMPLAINT

Respondent did not deny the allegations of the first Complaint, and the parties stipulated to the facts and certain conclusions of law. The facts agreed to showed that Respondent was hired to represent a woman and her son in an automobile accident case. Respondent referred both clients to a doctor who examined and treated them. The doctor also prepared narrative reports for Respondent. Over $3,000.00 in medical bills were sent to Respondent by the doctor. The cases were settled, and upon receiving settlement checks for each client, Respondent withheld $2,900.00 as an attorneys fee and $3,000.00 to pay the doctor. The remaining $3,900.00 was forwarded to the clients. However, Respondent did not forward the doctor's $3,000.00.

The doctor contacted Respondent on numerous occasions about the medical bills, and Respondent informed him that depositions were being taken in an effort to settle the case. Such misrepresentations continued until almost one year after the case settled at which time the doctor contacted Respondent's client about the bills and learned that the cases had settled.

Shortly thereafter, Respondent gave the doctor a cashier's check for $3,000.00. The doctor then informed him that the total medical bill was for $4,060.00. Respondent agreed to pay the extra $1,060.00 to the doctor out of his own funds.

---

1. Upon application of Complainant, the two disciplinary actions were consolidated. *See State ex rel. Oklahoma Bar Ass'n v. Moss*, 794 P.2d 403 (Okla.1990) (consolidation of complaints is judicially economical).

Respondent further stipulated that his conduct was in violation of Rules 1.15(b) and 8.4(c) of the Oklahoma Rules of Professional Conduct, *infra*, and Rule 1.4(b) of the Rules Governing Disciplinary Proceedings, *infra*.

After a hearing, the trial panel found that Respondent had misused funds which did not belong to him. Even though noting Respondent had committed acts which could subject him to disbarment, the trial panel found the mitigating circumstances warranted only a private reprimand and a four-year probation.

In its brief to this Court, Complainant asserted the trial panel's recommended punishment was too lenient even in light of the mitigating circumstances. Complainant requested that Respondent be suspended and be required to pay costs. Before we completed our *de novo* review of the first case, a second Complaint was filed.

## SECOND COMPLAINT

### Count I

The evidence at the hearing on the second Complaint established that Respondent was hired by Mr. A to bring an action against the insurance company which held a policy covering Mr. A's home. The home had been burglarized, and the insurer offered to settle the claim for $4,000.00. Mr. A refused the offer and moved to Georgia. On a trip back to Oklahoma, Mr. A retained Respondent and agreed to a contingency fee contract giving Respondent 50% of anything recovered over the $4,000.00 offer amount.

Respondent filed a lawsuit for $15,000.00 against the insurance company. He later negotiated a settlement with the insurance company. Mr. A testified that he neither knew of nor consented to the settlement. Respondent obtained a contract for settlement and release, a document dismissing the lawsuit, and a draft in the amount of $3,990.00 payable to Mr. A and Respondent. Respondent forged Mr. A's name on all three documents and deposited the funds into his trust account. Respondent asserted that Mr. A had given authority to Respondent to sign for him, but Respondent presented no proof of the authorization. Mr. A denied that he ever gave Respondent permission to sign for him.

Although he had no proof by way of receipt, Respondent also claimed he gave $3,000.00 in cash to Mr. A and kept the remaining $990.00 as his fee. Respondent explained that he could not get Mr. A to sign a receipt for the cash because Mr. A became angry over Respondent's retaining $990.00 and stormed out of his office. Respondent stated that this transaction occurred on a particular Sunday, but Mr. A was in Nigeria on the date Respondent alleged it occurred. Mr. A's passport corroborated this fact.

Five months later, Respondent wrote the insured notifying him that the case was set for trial and advising him to stay away from Oklahoma to avoid being deposed by the insurance company. Respondent testified that he knew the information in the letter was false but asserted that he wrote it because Mr. A asked him to in order to stall a lawyer in Georgia who was trying to collect an unpaid bill from Mr. A.

Mr. A testified that he called Respondent regularly to check on the status of the case. After becoming suspicious, Mr. A called the courthouse, determined who the judge assigned to his case was, and called her office. The judge's secretary told him that the case had been dismissed and sent a certified copy of the dismissal as proof. Mr. A then called Respondent to have him send the afore-mentioned letter advising of the trial date, apparently as proof of Respondent's deception.

Upon receipt of the letter, Mr. A hired an attorney in Georgia to look into the case. The Georgia attorney wrote Respondent requesting a copy of the file. Respondent wrote back refusing to send a copy of the file and informing the attorney of a settlement offer in the amount of $4,500.00 from the insurance company. Mr. A stated that Respondent also pleaded with him to accept the settlement offer from the insurer. Instead, Mr. A sent a letter to Respondent offering to settle their controversy for $15,000.00, the amount of the lawsuit filed by Respondent.

Respondent could not afford such so he wrote Mr. A offering to settle for $4,000.00 to be paid in monthly installments of $200.00.

Based upon these facts, the trial panel found Respondent engaged in numerous instances of professional misconduct and recommended that Respondent be disbarred.

## Count II

Mr. A filed a formal grievance with Complainant. Complainant mailed a copy of the grievance to Respondent and requested a written response from Respondent pursuant to Rule 5.2 of the Rules Governing Disciplinary Proceedings. In his response, Respondent alleged that upon receipt of the $3,990.00 draft, he gave Mr. A the $3,000.00 in cash. Complainant alleges this statement is false in violation of Rule 5.2 of the Rules Governing Disciplinary Proceedings and Rule 8.4(c) of the Oklahoma Rules of Professional Conduct.

## DISCUSSION

### First Complaint

Rule 1.4(b) of the Rules Governing Disciplinary Proceedings provides:

> "*Where money or other property has been entrusted to any attorney for a specific purpose, he must apply it to that purpose.* He may not avail himself of a counterclaim or set-off for fees against any money or other property of his client coming into his hands for such specific purpose, and *a refusal to account for and deliver such money upon demand shall be deemed a conversion.* This does not apply to the retention of money or other property otherwise coming into the hands of a lawyer and upon which the lawyer has a valid lien for his services." (Emphasis added)

Under this rule, any refusal to deliver over money entrusted to an attorney for a specific purpose is deemed a conversion. Respondent was entrusted with a portion of the proceeds of the settlement check for the specific purpose of paying the medical bills. He not only failed to notify the third person/doctor of the money, but also failed to deliver over the money when confronted about it. Rather, he converted it for personal use.

The stipulated facts support a finding that Respondent violated the provisions of Rule 1.4(b) of the Rules Governing Disciplinary Proceedings and Rule 1.15(b) of the Rules of Professional Conduct, which reads:

> "*Upon receiving funds* or other property *in which a* client or *third person has an interest, a lawyer shall promptly notify the* client or *third person.* Except as stated in this Rule or otherwise permitted by law or by agreement with the client, *a lawyer shall promptly deliver to the* client or *third person any funds* or other property *that the client or third person is entitled to receive* and, upon request by the client or third person, shall promptly render a full accounting regarding such property." (Emphasis added)

In an effort to hide his misconduct, Respondent engaged in numerous instances of deceit and misrepresentation. The stipulated facts show that Respondent also violated Rule 8.4 of the Rules of Professional Conduct which provides:

> "It is professional misconduct for a lawyer to:
>
> &ast; &ast; &ast; &ast; &ast; &ast;
>
> (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation; ..."

### Second Complaint

As to Respondent's conduct with regard to Mr. A, the clear and convincing evidence establishes that Respondent engaged in conduct involving dishonesty, fraud, deceit and misrepresentation. He admitted that he committed two instances of fraud by sending the letter to the Georgia attorney stating a settlement was forthcoming when it had already occurred and in sending the letter to Mr. A about the trial date when a trial was not set. Although he allegedly did these pursuant to Mr. A's request, such is no excuse for clear acts of fraud and deceit. These actions and others violate Rule 8.4(c), *supra.*

Respondent's actions further violated Rule 1.15(b), *supra*, in that he received funds in which his client, Mr. A, had an interest and failed to notify Mr. A of the funds and promptly deliver those funds to him. To make matters worse, Respondent acquired those settlement funds by practicing deceit on the insurance company and Mr. A.

In addition, the insurance company entrusted Respondent with the settlement funds for a specific purpose, to wit, to pay Mr. A in exchange for a release of claims and dismissal of the lawsuit. Respondent did not apply it to that purpose, but rather, converted it for his personal use. His actions violate Rule 1.4(b), *supra*.

These violations are serious enough in and of themselves to warrant disbarment. However, we note that Respondent's failure to properly keep the property of his client separate from his own property as well the failure to keep complete records of his trust fund accounts and transactions are violations of Rule 1.15(a) of the Rules of Professional Conduct. Moreover, Respondent violated Rule 1.5(c) of the Rules of Professional Conduct by failing to provide Mr. A with a written statement of the outcome of the contingency fee matter along with a receipt of remittance to Mr. A of his share.

Furthermore, Rule 1.3 of the Rules Governing Disciplinary Proceedings provides:

"The commission by any lawyer of any act contrary to prescribed standards of conduct, whether in the course of his professional capacity, or otherwise, which act would reasonably be found to bring discredit upon the legal profession, shall be grounds for disciplinary action, whether or not the act is a felony or misdemeanor, or a crime at all. Conviction in a criminal proceeding is not a condition precedent to the imposition of discipline."

■ A conviction for criminal actions is not required before this Court may impose discipline on a member of the bar. This is true even for the most severe discipline of disbarment. Respondent's actions clearly bring discredit upon the legal profession.

Not only has Respondent harmed his own clients and third persons, his conduct damages the reputation of all lawyers. The evidence establishes that Respondent violated Rule 1.3.

Finally, as to Count II of the second Complaint, we find Respondent violated Rule 8.4(c), *supra*, in using dishonesty or misrepresentation to conceal his misconduct. The clear and convincing evidence further shows that Respondent violated Rule 5.2 by misrepresenting the facts in a disciplinary proceeding. It reads:

"After making such preliminary investigation as the General Counsel may deem appropriate, the General Counsel shall either (1) notify the person filing the grievance and the lawyer that the allegations of the grievance are inadequate, incomplete, or insufficient to warrant the further attention of the Commission, provided that such action shall be reported to the Commission at its next meeting, or (2) file and serve a copy of the grievance ... upon the lawyer, who shall thereafter make a *written response which contains a full and fair disclosure* of all the facts and circumstances pertaining to the respondent lawyer's alleged misconduct unless the respondent's refusal to do so is predicated upon expressed constitutional grounds. *Deliberate misrepresentation in such response shall itself be grounds for discipline ...*" (Emphasis added).

## DISCIPLINE

■ Respondent has shown a propensity to violate the Rules of Professional Conduct and the Rules Governing Disciplinary Proceedings and then lie in order to hide his tracks. The trial panel in the first case took his word that this type of misconduct would not occur again. Yet, before this Court completed it's review of the first case, Respondent is before us again with almost identical misconduct.

This Court will not allow an attorney to misuse funds entrusted to them, especially when that misuse is to the detriment of a client or a third person. We also will not tolerate deception, dishonesty, and fraud to be practiced by a member of this bar wheth-

er as a means of gain for the attorney or as a way to conceal the misappropriation of trust funds. We discipline lawyers not to punish them for their acts, but rather to safeguard the interests of the public and the legal profession. We deem the most suitable discipline to achieve this aim is to disbar Respondent from the practice of law in this state. This discipline corresponds with the discipline warranted in other cases involving misuse of funds and deceit wherein the lawyer was disbarred. *State ex rel. Oklahoma Bar Ass'n v. Miskovsky,* 832 P.2d 814 (Okla.1992); *State ex rel. Oklahoma Bar Ass'n v. Perkins,* 757 P.2d 825 (Okla.1988); *State ex rel. Oklahoma Bar Ass'n v. Raskin,* 642 P.2d 262 (Okla.1982).

WE HEREBY ORDER AND DECREE that Respondent be **DISBARRED** from the practice of law and his name be stricken from the roll of attorneys. Respondent is further ordered to pay costs of these proceedings in the amount of $2,815.89.

All the Justices concur.