IN THE MATTER OF THE REINSTATEMENT OF TAYLOR



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:IN THE MATTER OF THE REINSTATEMENT OF TAYLOR

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 IN THE MATTER OF THE REINSTATEMENT OF TAYLOR
2018 OK 78
Case Number: SCBD-6551
Decided: 09/25/2018
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2018 OK 78, __ P.3d __

 
FOR PUBLICATION IN OBJ ONLY. NOT RELEASED FOR PUBLICATION. 

IN THE MATTER OF THE REINSTATEMENT OF: MICHAEL C. TAYLOR TO MEMBERSHIP IN THE OKLAHOMA BAR ASSOCIATION AND TO THE ROLL OF ATTORNEYS.

ORIGINAL PROCEEDING FOR ATTORNEY REINSTATEMENT

¶0 Michael C. Taylor (Petitioner) resigned his Bar membership in the State of Oklahoma in 2011 pending disciplinary proceedings and applied for reinstatement in August 2017. Following its evidentiary hearing, the Professional Responsibility Tribunal Trial Panel recommended we deny reinstatement. Upon de novo review, we agree.

REINSTATEMENT DENIED; COSTS ASSESSED.

Sheila J. Naifeh, Tulsa, Oklahoma, for Petitioner.

Stephen L. Sullins, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, Oklahoma, for Respondent.

Darby, J. 

¶1 The Supreme Court of Oklahoma possesses original, exclusive, and nondelegable jurisdiction to control and regulate the practice of law, licensing, ethics, and discipline of attorneys. In re Reinstatement of Kamins, 1988 OK 32, ¶ 18, 752 P.2d 1125, 1129. The Court finds the underlying record is sufficient for review and resolution of the Petition for Reinstatement pursuant to Rule 6.13 of the Rules Governing Disciplinary Proceedings (RGDP). 5 O.S.2011, ch. 1, app. 1-A; State ex rel. Okla. Bar Ass'n v. Braswell, 1998 OK 49, ¶ 7, 975 P.2d 401, 404. To assist the Court in its ultimate determination, the Professional Responsibility Tribunal Trial Panel (Trial Panel) conducts an evidentiary hearing and files a report with the Supreme Court. In its report, the Trial Panel sets forth findings regarding whether the applicant (1) possesses the good moral character to be admitted to the Bar, (2) has engaged in any unauthorized practice of law during the period of resignation, and (3) possesses the competency and learning in the law required for admission to practice law in the State of Oklahoma. RGDP 11.2, 11.5.

¶2 The applicant bears the heavy burden of proving by clear and convincing evidence that reinstatement is warranted on these grounds and must present stronger proof of his qualifications than a person seeking admission for the first time. RGDP 11.4, 11.5; In re Reinstatement of Mumina, 2009 OK 76, ¶ 8, 225 P.3d 804, 809. An applicant who has been resigned for more than five (5) years must also show that he has "continued to study and thus has kept himself informed as to current developments in the law sufficient to maintain his competency." RGDP 8.2, 11.5. In addition, the Court may also consider: (1) the applicant's present moral fitness; (2) the demonstrated consciousness of the conduct's wrongfulness and disrepute it has brought upon the legal profession; (3) the extent of rehabilitation; (4) the seriousness of the original misconduct; (5) the applicant's conduct after resignation; (6) the time elapsed since the resignation; (7) the applicant's character, maturity, and experience when he resigned; and (8) the applicant's present legal competence. In re Reinstatement of Pacenza, 2009 OK 9, ¶ 9, 204 P.3d 58, 62.

¶3 In deciding appropriate action, the Court must safeguard the interests of the public, the courts, and the legal profession. Kamins, 1988 OK 32, ¶ 21, 752 P.2d at 1130. At the same time, the Court balances the interests of the applicant against the fact that an unprincipled attorney may inflict tremendous harm upon his clients and the public. In re Reinstatement of Conrady, 2017 OK 29, ¶ 5, 394 P.3d 219, 221-22.

STANDARD OF REVIEW

¶4 This Court reviews the Trial Panel's findings de novo. State ex rel. Okla. Bar Ass'n v. Kinsey, 2009 OK 31, ¶ 12, 212 P.3d 1186, 1192. While entitled to great weight, the Trial Panel's report and recommendations are merely advisory in nature. State ex rel. Okla. Bar Ass'n v. Anderson, 2005 OK 9, ¶ 15, 109 P.3d 326, 330; Kamins, 1988 OK 32, ¶ 18, 752 P.2d at 1129. The ultimate decision regarding reinstatement rests with this Court. In re Reinstatement of Johnston, 2007 OK 46, ¶ 4, 162 P.3d 922, 923.

THE FACTS

¶5 Petitioner was initially admitted to the Oklahoma Bar Association in 1982. This Court has twice before disciplined Petitioner for mishandling client trust funds. First, in 2000, we suspended Petitioner's license for thirty (30) days; State ex rel. Okla. Bar Ass'n v. Taylor (Taylor I), 2000 OK 35, ¶ 36, 4 P.3d 1242, 1256; then three years later, we imposed a public reprimand for similar misconduct. State ex rel. Okla. Bar Ass'n v. Taylor (Taylor II), 2003 OK 56, ¶¶ 15, 24, 71 P.3d 18, 26, 29.[1]

¶6 In 2011, the General Counsel for the Oklahoma Bar Association alleged that Petitioner misappropriated approximately $80,000 of client funds to gamble at casinos. The Bar stated that the money Petitioner stole from the account was from settlement funds awarded to a widowed client after her husband had been killed in a motorcycle accident. Petitioner allegedly removed the settlement funds incrementally and gambled away the entire amount on slot machines. After spending all of the money, Petitioner told his client what he had done and then pressured her into signing an affidavit characterizing the improper taking as "a loan." Petitioner informed the client that if she did not sign the affidavit, or if she reported him to the Bar, he would be disbarred and thus unable to pay her back at all. Afterwards, Petitioner reimbursed the stolen funds to the trust account with money partially provided to him by his mother.

¶7 The Bar charged Petitioner with professional misconduct in SCBD 5716, citing misappropriation of funds and coercion of the client. On January 24, 2011, this Court issued an Order suspending Petitioner's license to practice law, effective immediately. State ex rel. Okla. Bar Ass'n v. Taylor, 2011 OK 5. In this Order, we specifically directed Petitioner to "notify all clients having legal business pending with him within twenty days" and "to comply with all other requirements of Rule 9.1" of the RGDP. Id. ¶ 2. Petitioner then resigned his Bar membership pending disciplinary proceedings and voluntarily waived his right to contest any of the Bar's allegations against him. We approved Petitioner's resignation on May 2, 2011, and removed his name from the roll of attorneys. State ex rel. Okla. Bar Ass'n v. Taylor, 2011 OK 39, 266 P.3d 43.

¶8 In August 2017, Petitioner applied for reinstatement following the requisite five-year waiting period. RGDP 8.1(c). After conducting its evidentiary hearing, the Trial Panel found that while Petitioner possessed sufficient competency, he had engaged in the unauthorized practice of law while resigned and had "utterly failed" to show the moral character warranting reinstatement. Trial Panel Rep., pp. 3-5, Mar. 26, 2018. The report concluded:

Regrettably, the sum of evidence, including the serious personal and financial harm occasioned on his wife specifically, shows that his continued gambling is a priority which exceeds his desire to regain his license to practice law.

Id. at p. 5. Accordingly, the Trial Panel recommended we deny reinstatement.

DISCUSSION

¶9 In consideration of the entire record, we find that Petitioner (1) lacks sufficient competency to practice law, (2) engaged in the unauthorized practice of law while resigned, and (3) is not currently possessed of the moral character befitting membership to the Bar. We discuss each of these considerations below.

I. Competency to Practice Law

¶10 At the evidentiary hearing, Petitioner produced numerous credible witnesses to testify to his competency and learning in the law. Indeed, several attorneys in good standing affirmed Petitioner's seasoned legal experience, knowledge of the law, and skills in client representation. Testimony of these character witnesses demonstrates that Petitioner has remained informed on current developments in the law.

¶11 Competency to practice law, however, requires more. Specifically, Rule 9.1 of the RGDP requires that within twenty (20) days after being suspended or after resigning pending disciplinary proceedings, the lawyer must notify all clients of his inability to continue representation and withdraw from all pending cases in all courts. 5 O.S.2011, ch. 1, app. 1-A. Additionally, within these twenty (20) days, the lawyer must file:

an affidavit with the Commission and with the Clerk of the Supreme Court stating that the lawyer has complied with the provisions of this Rule, together with a list of the clients so notified and a list of all other State and Federal courts and administrative agencies before which the lawyer is admitted to practice. Proof of substantial compliance by the lawyer with this Rule 9.1 shall be a condition precedent to any petition for reinstatement.

Id. (emphasis added).

¶12 Petitioner was suspended from the practice of law on January 24, 2011. Therefore, Petitioner's twenty-day deadline to withdraw and notify his clients and the courts was February 14, 2011, at the latest. Petitioner, however, failed to file any such record of his compliance until January 19, 2018, nearly seven (7) years later. The untimely affidavit also lacks compliance by neglecting to include a list of clients notified or courts or administrative agencies before which Petitioner was admitted to practice.

¶13 The Court has previously excused a nonconforming affidavit that, although untimely, was submitted within a reasonable period and included all documentation necessary to meet the standards imposed by the rule. See In re Reinstatement of Munson, 2010 OK 27, ¶ 28, 236 P.3d 96, 106 (finding proof of substantial compliance in notice filed nine (9) days late and then supplemented ten (10) days later with a full list of clients, agencies, and courts). Contrastingly, Petitioner's seven-year-late, incomplete affidavit does not signal a reasonable time period nor a sufficient effort to substantially comply with the standards imposed by the rule. Accordingly, Petitioner has failed to show clearly and convincingly that he is possessed of the requisite competency to re-engage in the practice of law. See id. ¶¶ 24-31, 236 P.3d at 105-07, In re Reinstatement of Bodnar, 2016 OK 12, ¶ 19, 367 P.3d 916, 920.

II. Unauthorized Practice of Law

¶14 Petitioner openly admits he engaged in the unauthorized practice of law while resigned, yet he conceals the full extent of his misconduct. The Oklahoma Rules of Professional Conduct (ORPC) provide that "[a] lawyer who is not admitted to practice in this jurisdiction shall not "hold out to the public or otherwise represent" that he is so permitted." ORPC 5.5(b)(2), 5 O.S.2011, ch. 1, app. 3-A. Likewise, "a lawyer shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction." ORPC 5.5(a).

¶15 Petitioner actively engaged in the unauthorized practice of law in a case he had pending in federal court. Unaware of Petitioner's suspension, opposing counsel in that case filed and attempted to discuss two pending motions with Petitioner. In these filings, opposing counsel stated that Petitioner agreed to discuss the first motion, but declined to discuss the second. On neither occasion, however, did Petitioner ever inform opposing counsel he was suspended.

¶16 Similarly, without notice of Petitioner's suspension, the federal court scheduled a hearing on the second motion for March 10, 2011. Just one (1) day before the hearing was set to occur, Petitioner filed an "Application to Extend or Reset Deadlines and Reopen Discovery." Only at this point, nearly a month past his February 14 notice deadline, did Petitioner inform the court he was suspended from the practice of law. Even more egregious, in doing so Petitioner fabricated a new deadline of March 11, presumably to make it appear as if he had given the court proper notice. Not only did Petitioner distort the timeline of events, but he perpetrated this fraud in the eleventh hour in a way that could have damaged his client's case. Therefore, Petitioner violated Rule 3.3(a) of the ORPC by knowingly making a false statement of fact to a tribunal and failing to thereafter correct that statement. 5 O.S.2011, ch. 1, app. 3-A.

¶17 Regarding Petitioner's unauthorized practice of law in this federal case, the Trial Panel stated that Petitioner "was between the Devil and The Deep, Blue Sea." Trial Panel Rep., p. 4, Mar. 26, 2018. We disagree. No outside force prevented Petitioner from filing a truthful, timely notice of his suspension. It was Petitioner's dishonesty and delay -- no one else's -- that landed him and his client in this predicament. Petitioner's behavior presents clear rule violations. This Court will not simply ignore Petitioner's lack of candor and noncompliance, particularly because he should have been extraordinarily careful to follow even the most minor of rules while resigned. See In re Reinstatement of DeBacker, 2008 OK 17, ¶ 23 n.23, 184 P.3d 506, 515, n.23.

III. Moral Character

¶18 Petitioner's moral character presents a central issue in this matter, primarily because Petitioner has produced little evidence to show how he has utilized the past six (6) years to rehabilitate himself. For many years, Petitioner played only live poker and was able to engage in this activity with moderate control. Eventually, however, Petitioner began playing slot machines and got hooked. He then started dipping into his client's trust account to fuel this addiction. Thereafter, in order to restore what he had improperly taken, Petitioner strapped himself and his family with oppressive debt. Instead of endeavoring to climb out of this hole, Petitioner dug himself and his family deeper still. Petitioner currently owes considerable sums of money to the Internal Revenue Service, the Oklahoma Tax Commission, and providers of student loans for the benefit of his children.

¶19 This Court has reinstated applicants who, like Petitioner, took client funds to pay for gambling, but only after the applicant established clearly and convincingly that a re-offense was not likely. For example, in In re Reinstatement of Elias, this Court noted, "It is significant that Elias has put great efforts into placing himself in a position to be considered for readmission by making restitution and clearing his debts." 1988 OK 86, ¶ 10, 759 P.2d 1021, 1024. Likewise, we have reinstated other applicants who discontinued their injurious gambling behaviors and otherwise demonstrated consistent life changes illustrating the moral character warranting reinstatement. In re Reinstatement of Clifton, 1990 OK 15, ¶¶ 3-5, 787 P.2d 862, 862-63; In re Reinstatement of Snodgrass, 1933 OK 592, ¶¶ 11-13, 26 P.2d 756, 758. Conversely, Petitioner has neither cleared his debts nor gained control over his addictive behavior.

¶20 More importantly, Petitioner continued to gamble periodically throughout his resignation, including an instance just five (5) days prior to filing his Petition for Reinstatement. The Court's concern is that Petitioner will continue gambling and thereby place client funds at risk, further burden his family, and stain the Bar all the more. Petitioner must somehow convince us that the hook is out of his mouth before we readmit him to membership in the Bar.

¶21 The Court weighs heavily Petitioner's marginal efforts to regain control over his caustic behaviors. Petitioner claims that after resigning he participated in counseling to work through his addiction. His sporadic appearances throughout this time, however, were inconsistent at best and had discontinued completely by March 2016. Only after filing for reinstatement did Petitioner resume his efforts to seek treatment. Petitioner fails to show how this on-again, off-again approach to counseling has sufficiently helped him manage his gambling issues.

¶22 This Court also allowed reinstatement in In re Reinstatement of Fraley after the applicant resigned for misappropriation of funds to support wagering on horse races. 2007 OK 74, ¶ 8, 175 P.3d 355, 357. Regarding Fraley, we emphasized:

He has accepted full responsibility for his actions and has taken steps to rehabilitate himself. He no longer gambles on horse races or imbibes heavily, and he sought professional counseling for four years.

Id. ¶ 5, 175 P.3d at 356. The Court has even reinstated an applicant who committed several criminal acts while intoxicated. Conrady, 2017 OK 29, ¶¶ 1-2, 394 P.3d at 220-21. There we highlighted:

Conrady's conduct after imposition of discipline shows he obtained regular professional medical behavioral treatment with a professional witness stating Conrady's "complete success" with this treatment.

Id. ¶ 8, 394 P.3d at 222. In contrast, Petitioner has persisted in the gambling behaviors that led to his resignation and has not meaningfully sought recovery.

¶23 We must consider Petitioner's ongoing addiction to gambling, and how that addiction may impugn the interests of the public, the courts, and the legal profession. At times, Petitioner has declared that he is finished gambling, yet before the Trial Panel he testified otherwise:

I'm not saying I won't ever, in twenty (20) years, go to Vegas. I can't tell you that. But my present plan today is not to gamble anywhere, not online, not for play money, not -- because I've shut that all down. My wife watches me.

Trial Panel Hr'g Tr., p. 386, Jan. 10, 2018. Petitioner's verbal assurances that he will not gamble again are insufficient to meet his high burden of showing he is fit to practice law. Likewise, the Court will not place the responsibility on Petitioner's wife to "keep an eye on him" and manage his tendencies for the foreseeable future. The gambling behaviors are Petitioner's problem, and he must be the one to remedy them before the Court will favor reinstatement.

¶24 Equally troubling, Petitioner does not appear to fully appreciate the wrongfulness of his prior misconduct and the resulting disrepute upon the legal profession. The Trial Panel asked Petitioner if he believed he possessed the good moral character to warrant reinstatement, to which he plainly replied: "Yes, I think I always have." Id. at 341 (emphasis added). Unfortunately, we disagree. Petitioner dismisses the gravity of his dishonesty and in doing so minimizes the corrosive impact of his decisions on clients and family members left in his wake.

¶25 Contrary to accepting responsibility, at the reinstatement hearing Petitioner attempted to recant his prior waiver of rights to contest the Bar's allegations by denying certain portions of their findings. Specifically, Petitioner testified that he did not coerce or pressure his former client to sign the cover-up affidavit after he siphoned off her money. To now switch his position on this critical aspect of the original complaint shows Petitioner possesses neither remorse nor a willingness to stand by his word and take responsibility for his wrongdoing.

¶26 Aside from this contention, Petitioner does not deny that he took the settlement money without the client's knowledge. Nor does he deny that he conjured up the bogus affidavit and placed it before his client in a desperate attempt to prevent a third disciplinary action. Petitioner, therefore, violated Rule 8.4 of the ORPC by engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation. 5 O.S.2011, ch. 1, app. 3-A. The fact remains that Petitioner perpetrated this fraud whether he compelled the client to sign the document containing the misrepresentation or not.

¶27 Lastly, the seriousness of Petitioner's breach of trust gives this Court pause in considering the Petition for Reinstatement. The Court has consistently regarded misappropriation of funds and subsequent efforts to conceal the defalcation to be among the most egregious of rule violations. State ex rel. Okla. Bar Ass'n v. Lavelle, 1995 OK 96, ¶ 28, 904 P.2d 78, 82-83; State ex rel. Okla. Bar Ass'n v. Miskovsky, 1992 OK 40, ¶ 15, 832 P.2d 814, 818; State ex rel. Okla. Bar Ass'n v. Perkins, 1988 OK 65, ¶ 34, 757 P.2d 825, 832; State ex rel. Okla. Bar Ass'n v. Raskin, 1982 OK 39, ¶ 22, 642 P.2d 262, 268. To be clear, the fact that Petitioner is addicted to gambling does not by itself lead us to believe he is morally unfit to practice law. The Court's dismay rests instead in the unethical conduct flowing from Petitioner's addiction alongside his lack of visible rehabilitation.

CONCLUSION

¶28 The combination of Petitioner's ongoing addiction, significant debt, and failure to accept responsibility indicate the potential for greater malfeasance, harm to clients, and disrespect upon all who practice law in Oklahoma. Upon thorough review, we find Petitioner has engaged in the unauthorized practice of law, lacks sufficient competency, and does not currently possess the moral character befitting membership to the Bar. Petitioner has failed to meet his burden by clear and convincing evidence. Therefore, his request for reinstatement is denied. Pursuant to Rule 11.1(c) of the RGDP, Petitioner is ordered to pay costs associated with this proceeding in the amount of $148.25. 5 O.S.2011, ch. 1, app. 1-A. Petitioner must wait at least one (1) year from this denial before applying again for reinstatement. RGDP 11.1(e).

REINSTATEMENT DENIED; COSTS ASSESSED.

All Justices concur.

FOOTNOTES

[1] The acts of misconduct in Taylor I occurred from November 1998 through June 1999, and those in Taylor II began just a few months later in November 1999. Taylor II, 2003 OK 56, ¶ 15, 71 P.3d at 26. The second series of events, however, was not reported to the Bar until July 2000 -- after our imposition of discipline in Taylor I. Id. Due to the overlap in discipline and reporting, which prevented the Court from considering the related conduct in Taylor I, the Bar stipulated Taylor II should not be treated more harshly as a distinct, repeat offense. Id.

 





 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 1988 OK 32, 752 P.2d 1125, Reinstatement of Kamins, Matter of
Discussed at Length
 1988 OK 65, 757 P.2d 825, State ex rel. Oklahoma Bar Ass'n v. Perkins
Discussed
 1988 OK 86, 759 P.2d 1021, Reinstatement of Elias, Matter of
Discussed
 1990 OK 15, 787 P.2d 862, In the Matter of the Reinstatement of Clifton
Discussed
 1992 OK 40, 832 P.2d 814, 63 OBJ 817, State ex rel. Oklahoma Bar Ass'n v. Miskovsky
Discussed
 1933 OK 592, 26 P.2d 756, 166 Okla. 156, In re SNODGRASS.
Discussed
 1995 OK 96, 904 P.2d 78, 66 OBJ 3067, State ex rel. Oklahoma Bar Assn. v. Lavelle
Discussed
 2003 OK 56, 71 P.3d 18, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. TAYLOR
Discussed at Length
 2005 OK 9, 109 P.3d 326, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. ANDERSON
Discussed
 2007 OK 46, 162 P.3d 922, IN THE MATTER OF THE REINSTATEMENT OF JOHNSTON
Discussed
 2007 OK 74, 175 P.3d 355, IN THE MATTER OF THE REINSTATEMENT OF FRALEY
Discussed
 2008 OK 17, 184 P.3d 506, IN THE MATTER OF THE REINSTATEMENT OF DEBACKER
Discussed
 2009 OK 9, 204 P.3d 58, IN THE MATTER OF REINSTATEMENT OF PACENZA
Discussed
 2009 OK 31, 212 P.3d 1186, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. KINSEY
Discussed
 2009 OK 76, 225 P.3d 804, IN THE MATTER OF THE REINSTATEMENT OF MUMINA
Discussed
 2010 OK 27, 236 P.3d 96, IN THE MATTER OF THE REINSTATEMENT OF MUNSON
Discussed
 2011 OK 5, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. TAYLOR
Cited
 2011 OK 39, 266 P.3d 43, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. TAYLOR
Discussed
 2016 OK 12, 367 P.3d 916, IN THE MATTER OF THE REINSTATEMENT OF BODNAR
Discussed
 2017 OK 29, 394 P.3d 219, IN THE MATTER OF THE REINSTATEMENT OF CONRADY
Discussed at Length
 2000 OK 35, 4 P.3d 1242, 71 OBJ 1163, State ex. rel. Oklahoma Bar Assn. v. Taylor
Discussed
 1982 OK 39, 642 P.2d 262, State, ex rel., Oklahoma Bar Ass'n v. Raskin
Discussed
 1998 OK 49, 975 P.2d 401, 69 OBJ 2101, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. BRASWELL
Discussed


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA