IN THE MATTER OF THE REINSTATEMENT OF McTEER
2025 OK 16
Case Number: SCBD-7575
Decided: 03/04/2025
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2025 OK 16, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

 

 

In the Matter of the Reinstatement of:

Amy Lynn McTeer to membership in the Oklahoma Bar Association and to the Roll of Attorneys, Petitioner,
v.
Oklahoma Bar Association, Respondent.

ORIGINAL PROCEEDING FOR RULE 11 REINSTATEMENT

¶0 Petitioner, Amy Lynn McTeer, filed a petition for reinstatement to membership in the Oklahoma Bar Association. Both the Professional Responsibility Tribunal and the OBA recommended that Petitioner's reinstatement be denied. After a de novo review, Petitioner's application for reinstatement is denied.

REINSTATEMENT DENIED;
PETITIONER ORDERED TO PAY COSTS AND FEES

Amy Lynn McTeer, Durango, Colorado, Petitioner, pro se.

Lorraine Dillinder Farabow, First Assistant General Counsel, Oklahoma Bar Association, for Respondent.

Gurich, J.

¶1 Petitioner, Amy Lynn McTeer, seeks reinstatement as a member of the Oklahoma Bar Association pursuant to Rule 11, Rules Governing Disciplinary Proceedings (RGDP), 5 O.S.2021 ch.1, app. 1-A. After filing her petition, the Professional Responsibility Tribunal (PRT) held a hearing pursuant to Rule 11, RGDP. The PRT concluded that Petitioner should not be reinstated. We hold that Petitioner has not shown by clear and convincing evidence that she possesses the requisite good moral character or sufficient competency and learning in the law. Therefore, her application for reinstatement is denied.

FACTS AND PROCEDURAL HISTORY

¶2 Petitioner was admitted to the Oklahoma Bar Association and entered on the Roll of Attorneys on September 22, 1998. She practiced law in Oklahoma until a series of events which led to her interim suspension on February 14, 2012, and her resignation pending disciplinary proceedings on January 14, 2013.

¶3 Petitioner's suspension and resignation stemmed from a rash of criminal charges against her that began in 2011. In 2011, Petitioner was in a relationship with a former client, Roy Kuykendall. At that time, Kuykendall was incarcerated, so Petitioner and Kuykendall made a plan for him to escape from the prison. On July 9, 2011, Petitioner picked Kuykendall up when he was supposed to be on the work release program. Petitioner posted pictures of herself and Kuykendall on social media and met with Petitioner's brother in Bricktown. Petitioner's brother alerted the authorities that Kuykendall was a fugitive and Petitioner was harboring him. Petitioner was charged in Canadian County District Court CF-2011-455 with assisting a prisoner to escape and charged in Oklahoma County District Court case number CF-2011-4024 with harboring a fugitive.

¶4 Petitioner's second incident occurred when she contacted the Nichols Hills Police Department, stating that there were two men trying to get into her residence with weapons. When officers arrived, they found Petitioner with four children in her car. The children insisted that they had not seen anyone in the home. Officers noticed Petitioner's strange behavior during this time and were advised by EMSA and the fire department personnel on the scene that Petitioner was under the influence of narcotics. Petitioner was subsequently arrested and charged in Oklahoma County CF-2012-80 with four counts of felony child endangerment and one misdemeanor count of knowingly making a false report of a crime.

¶5 These allegations resulted in the OBA filing a complaint and request for interim suspension of Petitioner's bar license on December 30, 2011. Petitioner was given the opportunity to show cause why the order of interim suspension should not be ordered. Through counsel, Petitioner responded to the show cause order on January 17, 2012, generally denying that her continued practice posed an immediate threat of substantial harm to the public and requested a hearing before the PRT. A second show cause order requested the parties to show why Petitioner was not unfit to practice due to her habitual substance abuse.

¶6 While her case was pending, Petitioner was arrested again on February 6, 2012, for public intoxication and possession of drug paraphernalia. In this case, Petitioner was at a Love's in Logan County when she stopped a police officer and asked for a ride to her home. When asked why she needed a ride, Petitioner told the officer that she had met a man at a truck stop in Oklahoma City, that they were smoking out of glass pipes, and she believed he may have drugged her because she felt really funny. The officer checked her pupils and determined that she was intoxicated. After putting her in the patrol car, she told the officer to look in her left jacket pocket, where a glass pipe with white residue and burnt brownish residue in the bowl. Upon testing, the pipe showed a positive result for methamphetamine. Petitioner was charged with possession of a controlled dangerous substance, unlawful possession of drug paraphernalia, and public intoxication in Logan County District Court case number CF-2012-34.

¶7 This Court entered an interim suspension of Petitioner on February 14, 2012, in case number SCBD 5827.

¶8 Petitioner's final criminal case stemmed from her arrest on August 9, 2012, when she caused a personal injury accident while she was driving under the influence of drugs. She was charged with that crime in Oklahoma County District Court case number CM-2012-2910.

¶9 On December 20, 2012, Petitioner submitted her resignation pending disciplinary proceedings wherein she acknowledged the proceedings against her and agreed to surrender her membership in the Oklahoma Bar Association with the knowledge that she could not make application for reinstatement for five years. On January 14, 2013, the Court approved Petitioner's resignation.

¶10 On October 27, 2023, Petitioner filed a Petition for Reinstatement with this Court. A trial panel was appointed, and a hearing was held before the PRT on January 24, 2024. The OBA reserved its recommendation on reinstatement until the end of the trial after evidence had been presented. Petitioner represented herself. The parties submitted joint exhibits, including Petitioner's Reinstatement Questionnaire which included information about where she has lived and worked in the time since her resignation.

¶11 At the PRT hearing, Petitioner testified that since her resignation, she lived in Oklahoma, Indiana, and Colorado, and held jobs in restaurants before finding paralegal work in law offices. From 2013 to 2015, Petitioner worked as either a paralegal or legal assistant for Attorneys Keith Nedwick, Mike Arnett, Tuan Khuu, and Joi Miskel. In 2015, Petitioner moved to Colorado where she worked various jobs many as either a clerk, caretaker, or housekeeper. In 2018, she worked for 2 weeks performing legal research for Evans & Company, and in 2019, she worked for 3 months as a front desk assistant for Attorney Tom Dugan. Petitioner has been self-employed since 2020, working as a mediator in the Eleventh Judicial District Court of New Mexico and as a vacation home housekeeper. In 2023, Petitioner worked for Attorney Matthew Campbell for less than 10 hours. Petitioner admitted that she had a substance abuse issue for many years. Petitioner asserted that she attended rehab a few times and asserted that from sometime in 2013 to 2018, she did not abuse alcohol or drugs. She had a short relapse in 2018, but regained her sobriety as of August 6, 2018, and has remained sober. In her testimony, Petitioner asserted that she regularly attends Alcoholics Anonymous (AA) meetings, is a sponsor, and was elected as group service representative for the AA Durango Central Group. Petitioner described her recovery including acknowledging the relapses that occurred and ongoing mental health treatment. She expressed that she has grown immensely over the intervening years and believes she is more capable of responsibly practicing law now than she was when she was first licensed. Petitioner acknowledged the crimes she committed and admitted that they had a profound impact on the public perception of the profession. As to her competency, Petitioner asserted that she had proven she was competent through the fact that she had represented herself well in her custody case and successfully got a speeding ticket dismissed. She further testified to the many hours of CLE that she had taken; conversations with Michael Taylor Shipley about legal issues; legal work she did between 2012 and 2015; mediation training she took at the University of New Mexico College of Law; and that she had read all of the Oklahoma Bar Journals.

¶12 In addition to her own testimony, Petitioner presented the video testimony of seven witnesses: Joyce Cohen, Elizabeth Nelson, Bonnie Peruttzi, Debby Fourstar, Jackie Kerkering, Paul Pane, and Michael Taylor Shipley. Joyce Cohen is a retired district court magistrate who employed Petitioner to clean her home. Ms. Cohen testified that Petitioner has been honest about her addiction and feels that Petitioner is trustworthy and reliable. She did not testify as to Petitioner's competency in the law.

¶13 Elizabeth Nelson employed Petitioner to clean her rental homes. Ms. Nelson testified that Petitioner was honest about her past legal and substance abuse problems. Ms. Nelson asserted that due to Petitioner's reliability and trustworthiness, she believed she would be competent to represent a client charged with first-degree murder but otherwise did not testify as to Petitioner's competency in the law.

¶14 Bonnie Peruttzi is the Executive Director of Transition House in Norman and knew Petitioner as both a former client who went through the transitional living program for nine months in 2012-2013, and as a current client through the outreach program. Ms. Peruttzi testified to the progress that she had seen in Petitioner's recovery and that though Petitioner had relapsed, it is a normal part of the process. She also testified that Petitioner had taken responsibility for her actions and had grown from her mistakes. Ms. Peruttzi testified that she would trust Petitioner to provide legal advice and that she thinks her "competence and skills seem very good."

¶15 Debby Fourstar employed Petitioner as a caretaker for her elderly mother. Ms. Fourstar testified that Petitioner had been honest about her substance abuse, and that she was a wonderful caretaker for her mother often going above and beyond. She found that Petitioner was honest and responsible, and she would trust Petitioner for legal advice if her reinstatement was granted.

¶16 Jackie Kerkering served as Petitioner's AA sponsor from August 2018 to present. She testified that Petitioner has worked through the steps and become an active member of the group. Ms. Kerkering testified that she was present for the hearings in Petitioner's custody case in which Petitioner represented herself. She asserts that Petitioner "did a fine job. It was a very -- very professional job."

¶17 Paul Pane knows Petitioner through their time together in AA and the Alano Club. Mr. Pane testified that Petitioner is actively involved in community service and is an outstanding part of the community. He testified that Petitioner meets the moral character and fitness that is required of the legal field, as understood from his work in law enforcement. Mr. Pane could not speak to Petitioner's competency or learning in the law.

¶18 Michael Taylor Shipley has known Petitioner for several years. Mr. Shipley testified that Petitioner is much more stable than she was fifteen years ago and that she has expressed remorse for the crimes she committed. He further testified that he has spoken at length with Petitioner regarding current events and the law and believes she is competent to resume the practice of law.

¶19 The OBA called two witnesses: Matthew Campbell and Rhonda Langley. Matthew Campbell testified that he had employed Petitioner as a paralegal for less than ten hours in 2023. Mr. Campbell asserted that Petitioner's work was so subpar that it caused him to question whether she had ever been an attorney. Mr. Campbell searched the internet for Petitioner's history where he found she had not been fully forthcoming with her past. While Petitioner had told him she had a substance abuse problem, she did not disclose the full extent of the criminal cases. After this discovery, Mr. Campbell told Petitioner that she need not return. Mr. Campbell testified that he did not believe Petitioner was competent to resume the practice of law.

¶20 Rhonda Langley testified as an investigator for the General Counsel's Office of the OBA. Ms. Langley testified as to the investigation of Petitioner's petition for reinstatement. She reviewed Petitioner's tax information, ran an OSBI report and reviewed it, checked to see if any Client Security Funds had been paid on Petitioner's behalf to former clients, and procured affidavits regarding past dues and CLE credits. Ms. Langley found nothing negative in Petitioner's taxes nor in the OSBI report. She further found that no Client Security Funds had been paid. She did find that criminal costs had not been paid, but when she brought that to Petitioner's attention, Petitioner promptly paid the costs. Ms. Langley testified that there had been no comments from the public or the Bar regarding the publication of the notice of the PRT hearing. She attempted to contact Petitioner's former employers and spoke to Tom Dugan and Matthew Campbell. However, she was unable to speak with Tuan Khuu, who resigned pending disciplinary proceedings in 2020, or Mike Arnett, who passed away in 2022.

¶21 During cross-examination of Petitioner, counsel for the OBA pointed out concerns about Petitioner's competency to practice law. There were several typos in Petitioner's petition; she used the wrong wording when referring to her resignation pending disciplinary proceedings; and her pleadings included a faulty certificate of service, incorrect case numbers, stylization issues, incomplete sentences, incorrect punctuation, and missing information. The OBA counsel also raised concerns that Petitioner's handwriting in her reinstatement questionnaire is almost illegible in many places.

¶22 At the conclusion of the hearing, the PRT ordered the parties to submit their closing statements in writing. Both Petitioner and counsel for the OBA submitted their written closing statements on February 9, 2024. Since the OBA had reserved its recommendation on reinstatement until the end of the trial after evidence had been presented, it utilized its closing statement to recommend against reinstatement. Based on the testimony of witnesses and the multitude of mistakes that Petitioner made in the case, counsel for the OBA asserted that Petitioner had failed to meet her burden by clear and convincing evidence and failed to prove that she had the requisite good moral character and possessed the competency and learning required for reinstatement.

PRT RECOMMENDATIONS

¶23 The PRT filed its report on March 4, 2024, recommending that Petitioner not be reinstated. The PRT found that Petitioner had sufficient proof that she was morally fit to resume practice, but she did not prove that she has retained her competency in the law.

¶24 The PRT report stated that Petitioner failed to support her competency with evidence or testimony at the hearing. In her affidavit of employment and activities, she lists less than four months of employment in the legal field in the last five years. The PRT also remarked on Petitioner's conduct during the hearing and found such conduct incompetent. This included her demeanor, her questioning of witnesses, the way in which she responded (or failed to respond) to objections and rulings on objections, and the manner in which she testified. During examination of witnesses, Petitioner would pose compound questions or ask convoluted or unintelligible questions. During her testimony, Petitioner would fail to answer with a simple yes or no as directed; would give an answer before the question was completed; and testify even when no question was before her. Petitioner objected to relevance but then agreed that the Court had the right to look at everything; attempted to question the OBA's counsel as a witness; was unable to refer to a Joint Exhibit by its number; failed to understand when the Presiding Master cautioned her not to offer hearsay testimony; and was unable to tell the Presiding Master how much time she would need for her direct testimony.

¶25 Finally, the PRT found that Petitioner has agreed to pay, and should pay, the fees and expenses of the investigation in this matter, including the cost of the original and a copy of the transcript of the hearing held before the PRT.

ANALYSIS

¶26 This Court has the non-delegable, constitutional responsibility to regulate both the practice of law and the ethics, licensure, and discipline of Oklahoma lawyers. In re Reinstatement of Kerr, 2015 OK 9345 P.3d 1118Matter of Reinstatement of Kamins, 1988 OK 32752 P.2d 1125In re Reinstatement of Goforth, 2019 OK 1434 P.3d 944

¶27 The burden on an attorney seeking reinstatement is a heavy one and is the same whether they are disbarred or resigned from the bar pending disciplinary proceedings. Kamins, 1988 OK 32In the Matter of the Reinstatement of Jones, 2009 OK 1203 P.3d 909In the Matter of the Reinstatement of Hird, 2001 OK 2821 P.3d 1043In the Matter of the Reinstatement of Jones, 2009 OK 1203 P.3d 909Kamins, 1988 OK 32

¶28 The OBA opposes Petitioner's reinstatement based on the seriousness of the offenses, the violations of her professional duties, and the relatively short period of time since her most recent use of methamphetamine. Petitioner's misconduct resulted in a multitude of criminal prosecutions, garnering national attention, and bringing tremendous disrepute to the profession.

¶29 Although Petitioner demonstrated remorse for the actions that led to her criminal convictions and incarceration, she testified that she was guilty of all the criminal charges. She also testified that she understood the gravity of the disrepute she brought to the profession through her actions, specifically stating: "How horrible for anybody to have to be in the same profession with me and have to answer to my misgivings."

¶30 While Petitioner has shown steadfast progress toward her sobriety, the seriousness of the original crimes should not be discounted. Petitioner's rash of poor decision making brought disrepute on the entire legal community. Due to the gravity and number of Petitioner's admitted crimes, and the disrepute brought upon the legal profession, this Court finds that there is insufficient evidence of the requisite good moral character to support Petitioner's request for reinstatement.

¶31 Additionally, a review of the transcript does not support a finding that Petitioner is competent to resume the practice of law. The overwhelming evidence presented by counsel for the OBA supports the conclusion that Petitioner is not competent to practice law and should not be reinstated. Petitioner did not present testimony from any former employer which would support the assertion that she is competent to be a practicing attorney. Further, Petitioner's questioning of witnesses was erratic and unintelligible at times. She asked compound and convoluted questions. Petitioner's own testimony was erratic and long-winded. Even when Petitioner was aware that her legal competency was seriously challenged, she failed to make certain that her written submissions were impeccable. Instead, her briefs and other filings were filled with errors.

¶32 For these reasons, the Court finds that Petitioner has not proven by clear and convincing evidence that she has maintained her competency and learning in the law.

APPLICATION FOR COSTS

¶33 The OBA filed an Application to Assess Costs in the prosecution of this matter pursuant to Rule 11.1(c), RGDP in the amount of $440.71. That application is granted.

CONCLUSION

¶34 We hold that Petitioner has not carried her burden to prove that she has the requisite moral fitness or the competency and learning in the law required to regain her license to practice law. Therefore, reinstatement is denied. The OBA's Application to Assess Costs is granted in the amount of $440.71.

REINSTATEMENT DENIED; COSTS ASSESSED.

CONCUR: C.J., ROWE, V.C.J., KUEHN, WINCHESTER, EDMONDSON, COMBS, GURICH, DARBY AND KANE, JJ.

FOOTNOTES