IN THE MATTER OF THE REINSTATEMENT OF CAREY
2025 OK 71
Case Number: SCBD-7792
Decided: 10/14/2025
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2025 OK 71, __ P.3d __

 

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

IN THE MATTER OF THE REINSTATEMENT OF:

TRACI CAIN CAREY,

TO MEMBERSHIP IN THE OKLAHOMA BAR ASSOCIATION AND TO THE ROLL OF ATTORNEYS.

ORIGINAL PROCEEDING FOR ATTORNEY REINSTATEMENT

¶0 Traci Cain Carey (Applicant) stopped paying bar dues to effectively resign from bar membership. As a result, Carey was suspended in June 2011 and stricken from the roll of attorneys in June 2012. Carey petitioned for reinstatement in November 2024. Following its hearing, the Professional Responsibility Tribunal Trial Panel (Trial Panel) recommended we deny reinstatement. Upon de novo review, we agree.

REINSTATEMENT DENIED; COSTS ASSESSED.

Traci Cain Carey, Pro Se.

Tracy Pierce Nester, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, Oklahoma, for Respondent.

Darby, J. 

¶1 The Supreme Court of Oklahoma possesses original, exclusive, and nondelegable jurisdiction to control and regulate the practice of law, licensing, ethics, and discipline of attorneys. In re Reinstatement of Taylor, 2018 OK 78

A suspended member who does not file an application for reinstatement within one year from the date he is suspended by the Supreme Court for nonpayment of dues shall cease automatically to be a member of the Association and the Board of Governors shall cause his name to be stricken from the membership rolls. Thereafter, if he desires to become a member of the Association, he will be required to make application for reinstatement, as provided in Rule 11 of the Rules Governing Disciplinary Proceedings.

Id., § 5.

¶2 A person who has been stricken from the roll of attorneys must file their petition for reinstatement and attach an affidavit showing all the applicant's activities since suspension of the right to practice law, as well as places of residence since that date. See Rules Governing Disciplinary Proceedings (RGDP) 11.1(a), 5 O.S.2011, ch. 1, app. 1-A. The applicant must attach her affidavit, as well as affidavits of the court clerks in the counties where the applicant has resided, establishing that the applicant has not practiced law since being suspended. Id. The applicant shall concurrently furnish a copy of everything filed with the Clerk of the Supreme Court to the General Counsel of the Bar. Id.

¶3 In a Rule 11 reinstatement proceeding, the Professional Responsibility Commission conducts an investigation on the application for reinstatement and the Trial Panel conducts a hearing and files its report with the Supreme Court to assist the Court in its ultimate determination. See RGDP 11.2, 11.3, 11.5. In its report, the Trial Panel includes findings regarding whether the applicant (1) possesses the good moral character to be admitted to the Bar; (2) has engaged in the unauthorized practice of law during the period of suspension; and (3) possesses the competency and learning in the law required for admission to practice law in the State of Oklahoma. See RGDP 11.5

¶4 The applicant bears the burden to prove, by clear and convincing evidence, that reinstatement is warranted and must present stronger proof of her qualifications than a person seeking admission for the first time. See RGDP 11.4. An applicant who has been resigned for more than five (5) years must also show that she has "continued to study and thus has kept [her]self informed as to current developments in the law sufficient to maintain [her] competency." RGDP 11.5(c). "Each application for reinstatement to the OBA must be considered on its own merits and will fail or succeed based on the evidence presented and the particular circumstances of that individual's case." McTeer v. Okla. Bar Ass'n, 2025 OK 16565 P.3d 406

STANDARD OF REVIEW

¶5 This Court reviews the Trial Panel's findings de novo. State ex rel. Okla. Bar Ass'n v. Kinsey, 2009 OK 31212 P.3d 1186In re Reinstatement of Gill, 2016 OK 61376 P.3d 200See RGDP 11.6.

FACTS

¶6 Carey was admitted to the Bar in September 2002. In 2010, while current on bar dues and CLE, Carey felt she was called to "lay down" her bar membership and stop practicing law. Tr. 90:3--93:7, May 27, 2025. At the Trial Panel hearing, Carey testified: "I had called the Bar Association in 2010 and advised them that I was going to resign, and needed guidance in the steps to take to do that, and I was advised of a better avenue of just laying it down and not paying the dues, so I went that -- the route -- that route." Tr. 65:16--21.

¶7 On June 20, 2011, this Court suspended Carey's bar license for failure to pay membership dues for the year 2011. See In re Susp. of Mems. of the Okla. Bar Ass'n for N.p. of 2011 Dues, 2011 OK 58Id. On November 25, 2024, more than twelve years after being stricken from the roll, Carey applied for reinstatement. Carey attached to the petition an affidavit which she had signed claiming she had not practiced law in Craig County from June 1, 2012 to November 13, 2024. Carey also attached affidavits from the court clerks of Craig, Nowata, Osage, Rogers, and Tulsa counties regarding time periods from June 1, 2012, through five months to two weeks before she filed the petition. Carey attached a list of residences and activities, both beginning in 2012, and not part of an affidavit. She also attached a list of eight witnesses and a CLE transcript for 2024, with the last class dated 10/24/24.

¶8 Carey included a certificate of service at the bottom of her petition that stated she mailed a copy to the General Counsel of the Bar on November 22, 2024; the Bar did not receive the petition for reinstatement. The Bar found Carey's petition on OSCN while preparing for an annual report in late January 2025. The Bar contacted Carey and scheduled an interview for the first week in February. At that time, Carey submitted her reinstatement questionnaire and additional verbal information.

¶9 At the Trial Panel hearing, Carey testified about her work and activities prior to law school that she believed were relevant and discussed her legal experience and training while she was a licensed attorney. Tr. 66:24--5, 67:15--23, 73:17--24, 78:1--85:10, 86:1--89:16. After Carey was stricken from the roll of attorneys, she worked as a Child Welfare Specialist for DHS from January to October of 2013 and was in court frequently during that time. Tr. 70:1--12, 99:12--24. DHS terminated her from that position. Tr. 99:24--100:2. From October 2013 to September 2015, she worked for CASA of Northeast Oklahoma in two roles, first as data specialist and then as both Advocate Coordinator and data specialist. Tr. 70:12--71:3, 100:3--101:1. She was also terminated from that position. Tr. 101:2--4. From September 2015 to November 2019, Carey was the co-owner of a business called Restoration Remodeling LLC. Tr. 101:12--102:10. She became the sole owner of that company in November 2019 and continued to wind down business until March 2021. Tr. 102:8--10, 104:18--105:22. In March 2020, Carey started Vineyard home Solutions, LLC which she testified that she still owns. Tr. 104:9--109:19. Carey testified that over the last ten years she had worked on a total of nineteen properties, either flipping them or researching them for investors. Tr. 71:4--17. And in May 2021, she started working as a housecleaner, which she also continues to do. Tr. 110:9--111:22. Carey called four character witnesses, none of whom she worked either for, or with, in the legal field. One witness was an attorney for whom Carey worked as a housekeeper for over a year.

¶10 The Bar presented testimony from the executive director of CASA of Northeast Oklahoma, who was Carey's supervisor during part of her time working there. She testified regarding why Carey was terminated from employment in 2013, and stated she would not recommend her being reinstated as an attorney. Tr. 172:6. The Bar also presented testimony from its investigator who found numerous discrepancies in Carey's reinstatement questionnaire and also in the additional information she provided verbally. The investigator also identified substantial documentation Carey failed to provide. Tr. 197, 199, 202, 206, 208. The investigator testified that he spoke to Carey two to three times about her unfiled tax returns and had never heard back from her about them. Tr. 240. Finally, Carey also failed to timely respond to communications from the Bar or to ever file a list of witnesses as required under RGDP 11.3(c). Tr. 211--238.

¶11 After conducting its hearing, the Trial Panel found that Carey had not engaged in the unauthorized practice of law since her name was stricken from the roll of attorneys, and she agreed to pay the fees and expenses of the investigation and required transcript of their proceedings. Carey did not, however, prove that she possessed good moral character which would entitle her to be reinstated and did not prove she possesses the competency and learning in the law necessary for reinstatement. Trial Panel Rep., p. 12, Jul. 17, 2025. Accordingly, the Trial Panel recommended we deny reinstatement. The Trial Panel explained its two primary concerns were Carey's failure to file tax returns since 2017 and the lack of evidence demonstrating her current legal competence. Id., p. 10. The Trial Panel noted Carey's demeanor and conduct during the hearing added to their concerns regarding her legal competence. Id., p. 10--11.

DISCUSSION

¶12 In consideration of the entire record, Carey has failed to show she has the competency and learning necessary to engage in the practice of law, failed to show she has not engaged in the unauthorized practice of law during the entire time she was suspended, and failed to convince us she is possessed of the moral character befitting of the legal profession.

I. Competency to Practice Law

¶13 We find Carey has not shown clearly and convincingly that she has remained competent to practice law. After she was stricken, Carey worked for DHS as a child welfare specialist, CASA of Northeast Oklahoma, and as a small business owner, both purchasing foreclosure properties and running a house cleaning service. Carey noted that she used her legal knowledge while researching foreclosure properties and ensuring they didn't have unknown liens on them. Tr. 70:7--17, 73:1--16. Carey read 60 books over the past year, none of which were specific to the law.

¶14 In 2024, Carey completed 28.5 CLEs, inclusive of 4 hours of ethics CLE. As of May 13, she had completed 11 hours of CLE in 2025, 4.5 of which were ethics hours. Resp. Ex. 3, Pet. for Reinstatement, Ex. I. Unfortunately, this is not enough to show she has continued to study and has kept herself informed as to current developments in the law sufficient to maintain her competency as required by RGDP 11.5. Carey's "attempt must be compared to that of practicing attorneys who are required to take twelve hours of continuing education, including one hour of ethics, every year. Rule 3, Rules for Mandatory Continuing Legal Education, 5 O.S.2011, ch. 1, app. 1--B, r. 3." In re Reinstatement of Bodnar, 2016 OK 12367 P.3d 916Bodnar, we discussed numerous attorneys' attempts to show legal skills in reinstatement cases. Id., ¶¶ 20-24, 367 P.3d, at 920--21. While all the attorneys mentioned therein had less hours of CLE than Carey, she still falls substantially short of what a licensed attorney would have completed during those thirteen years she was suspended.

¶15 Further, Carey's failure to comply with the rules governing reinstatement proceedings demonstrates a failure to meet her burden in this area. In re Reinstatement of Munson, 2010 OK 27236 P.3d 96 Bodnar, 2016 OK 12See RGDP 11.1(a)(1). She also failed to submit to the General Counsel the final witness list of names and addresses who she planned to call, ignoring direct requests for such. See RGDP 11.3(c). She further failed to communicate timely or accurate information to the Bar investigator. Id., ¶ 22, 367 P.3d, at 921. Carey has not made a showing to overcome the presumption.

II. Unauthorized Practice of Law

¶16 Rule 5.5 of the Oklahoma Rules of Professional Conduct (ORPC) provides that "[a] lawyer shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction, or assist another in doing so." ORPC, 5 O.S.2011, ch. 1, app. 3 A, r. 5.5(a). We suspended Carey from the practice of law on June 20, 2011, for failure to pay membership dues for the year 2011. See In re Susp. of Mems. of the Okla. Bar Ass'n for N.p. of 2011 Dues, 2011 OK 58Id.

¶17 Carey provided affidavits from the court clerks in the five counties in which she has lived since she was stricken stating that she has not practiced law since June 1, 2012. See In re Reinstatement of Bodnar, 2016 OK 12367 P.3d 916

III. Moral Character

¶18 Carey's moral character is the final issue. Carey has not filed income tax returns for tax years 2018 through 2024. Tr. 152:21--153:2. Carey testified that after she filed for reinstatement she gathered the relevant information and submitted it to a tax preparer, but she did not submit any evidence in support of this claim. Tr. 152:19--153:23. Carey also did not testify regarding any potential reasonable cause for her failure to file income tax returns. "To be clear, it is incumbent upon all Oklahoma Bar members to satisfy their tax obligations. It is not only the law, but a moral obligation this Court takes seriously." In re Reinstatement of Ogle, 2015 OK 60359 P.3d 178

¶19 In Hardin, the Trial Panel weighed two factors heavily against recommending reinstatement: present competence in legal skill and the applicant's failure to file income taxes for a five-year period. In re Reinstatement of Hardin, 1996 OK 115927 P.2d 545Id., ¶ 11, 927 P.2d, at 547.

¶20 We have previously said about competency that "we do not consider future plans to take classes" in determining if the person has the competency and learning necessary to be reinstated. See In re Reinstatement of Bodnar, 2016 OK 12367 P.3d 916In the Matter of Reinstatement of Clifton, SCBD 3451, 59 O.B.J. 1632, No.25, June 14, 1988, "that failure to pay taxes would prevent readmission. It is to be noted, however, that Clifton was subsequently reinstated after payment of delinquent taxes and upon proof of his fitness to practice law. In the Matter of Clifton, 787 P.2d 862See In re Reinstatement of Hardin, 1996 OK 115927 P.2d 545

CONCLUSION

¶21 Carey has failed to show that she possesses the legal knowledge to be competent to practice law. Carey filed affidavits which did not cover the full time she was suspended from the practice of law. Carey has also failed to show by clear and convincing evidence that she currently possesses the moral character befitting membership in the Oklahoma Bar Association. Therefore, Carey's request for reinstatement is denied. Pursuant to Rule 11.1(c) of the Rules Governing Disciplinary Proceedings, Carey is ordered to pay costs associated with this proceeding in the amount of $356.74. 5 O.S.2011, ch. 1, app. 1 A. Carey must wait at least one year from this denial before applying again for reinstatement. RGDP 11.1(e).

REINSTATEMENT DENIED; COSTS ASSESSED.

Rowe, C.J., Kuehn, V.C.J., Winchester, Combs, Gurich, Darby, Kane and Jett, JJ., concur

Edmondson, J., not participating

FOOTNOTES